# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WHITELAW'S ADM'R AND OTHERS *v.* WHITELAW'S ADM'R AND OTHERS.

### FEBRUARY 2, 1899.

. Absent, Cardwell, J.

1. EVIDENCE.—*Collateral Facts.*—As a general rule, facts which are collateral to the fact in issue, and which shed no light on the issue, are not admissible in evidence.

2. WILLS.—*Issue Devisavit vel non—Admissions of one of several Legatees.*— Upon the trial of an issue *devisavit vel non*, the admission of one of the legatees or devisees cannot be given in evidence to impeach the will where there are other legatees or devisees interested in sustaining it. The validity of the whole will being in issue, only such evidence can be introduced to impeach it as is competent against all the parties seeking to establish it.

Appeal from a decree of the Circuit Court of Orange county pronounced October 30, 1897, upon an issue of *devisavit vel non* in a suit in chancery wherein the appellees were the complainants, and the appellants were the defendants.

*Reversed.*

This suit was instituted in 1879, and has been twice before heard in this court.

B. R. Whitelaw filed his bill in the Circuit Court of Orange county against H. A. Sims and Pamelia W. his wife, H. A. Wiseman and Willie A. his wife, H. A. Sims, executor of Mary Whitelaw, deceased, and E. C. Yager.

The averments of the bill filed by B. R. Whitelaw in 1879 are as follows:

" That about the close of the year 1874 Mrs. Mary Whitelaw, of the said county, departed this life, possessed of considerable real and personal estate, most if not the whole of which constituted part of the estate left by her husband, David Whitelaw, deceased, or had been acquired with the means of the latter estate; that your orator and his sister, Mrs. Elizabeth C. Yager, are the only surviving children of the said decedents, and as your orator is advised, he is entitled to one half of the said estate, although he has hitherto unjustly been deprived of it; that very shortly before the death of the said Mary Whitelaw—to-wit, on the 8th day of December, 1874, when she had reached the age of eighty-eight years, when she was very feeble in body and imbecile in mind—she was by undue influence induced to execute a paper writing purporting to be her last will and testament, by which, after cutting off your orator with fifty dollars, she undertook to dispose of all the residue of the said estate among her said daughter's family, lending it for life to the said Elizabeth C. Yager, and directing it to be divided at her death between her daughters, Pamelia W., wife of H. A. Sims, and Willie A., wife of H. A. Wiseman, and appointing the said H. A. Sims to be sole executor of the said pretended will; that on the 22d day of February, 1875, in the County Court of Orange county, on the motion of the said H. A. Sims, certificate was granted him for obtaining probate of the said paper as the last will of said Mary Whitelaw, deceased, and thereupon he took upon himself the execution thereof. All of which was done without notice to your orator and without appearance on his part."

The bill charges " that the said paper writing is not the last will and testament of the said Mary Whitelaw, deceased; that she was not mentally capable of making any testamentary disposition of property at the date thereof; that its execution was procured unlawfully, by undue and unwarrantable means and

influences operating upon an enfeebled and imbecile mind, employed chiefly by the said H. A. Sims; that the said pretended will contradicts the lifelong purposes and wishes of the said Mary Whitelaw, and attempts to dispose of estate which she well knew, when in a sound state of mind, had been otherwise and finally disposed of by the will of her husband, and the same should now be adjudged to be null and void." It prays, among other things, that "an issue be directed, according to the statute in that case made, to determine the validity of the said paper purporting to be the last will and testament of Mary Whitelaw, deceased; that the same, upon being so ascertained, be adjudged and declared null and void," and for general relief.

The paper purporting to be the last will of Mary Whitelaw, deceased, is filed as an exhibit with the bill, and is in the following words and figures:

"In the name of God, Amen.

I, Mary Whitelaw, of the county of Orange and State of Virginia, being of sound mind and good memory, do make, publish, and declare this to be my last will and testament.

Item 1st. I desire that all my just debts shall be paid.

Item 2d. I will and bequeath to my son, Benjamin R. Whitelaw, fifty ($50) dollars.

Item 3d. I give to my daughter, Elizabeth C. Yager, all that portion of my estate which I have received, may receive, or shall be entitled to receive, from the estate of my son, Isaac D. Whitelaw.

Item 4th. All the rest of my estate, of what kind soever, both real and personal, I loan to my daughter, Elizabeth C. Yager, during her life, and at her death to be equally divided between my grandchildren, Pamelia W. Sims and Willie A. Wiseman, share and share alike.

Item 5th. If my executor, hereinafter named, shall at any time deem it advisable to the interest of my daughter, Elizabeth C. Yager, to sell any portion of the real estate loaned to

my said daughter, Elizabeth C. Yager, he is hereby authorized and empowered to sell the same, paying my daughter annually the interest on the amount of said sale.

Item 6th.　I hereby constitute and appoint H. Angus Sims executor *to* this my last will and testament, revoking all other wills heretofore made by me.

In witness whereof I have hereunto set my hand and affixed my seal this the 8th day of December, 1874.

MARY WHITELAW, [Seal.] "

" Signed, sealed, and acknowledged by Mary Whitelaw to be her last will and testament, and desired us to witness the same, she subscribing it in our presence.

December the 8th, 1874.

Attest:

ISAAC G. E. D. DAVIS,<br>JOAB C. HAMM."

The court ordered that a jury be empanelled at its bar to determine whether or not said paper was the true last will and testament of Mary Whitelaw, deceased, and directed that, upon the trial of the issue, the defendants in the bill should occupy the position of plaintiffs, and the complainant the position of defendant.

· During the trial of the issue, in October, 1897, the defendant in the issue (appellee) offered in evidence the nuncupative will of David Whitelaw, the deceased husband of Mary Whitelaw, which was probated in 1825, and is in the words and figures following, to-wit:

" Nuncupative will of Dr. David Whitelaw, who died the eighth day of April, 1825, of a sudden illness, at Mrs. Dennison's, in Orange county.　He desired that his estate should be kept together until his children come of age; that his estate should be equally divided among his children.　He spoke of the law making provision for his wife; said he thought a third of his estate would be sufficient for her; but if she was not

satisfied, to take what would satisfy her.  He wished his children to receive the best education that the country would afford, and to be brought up in the fear of the Lord.     ·

Made in the presence of us.

WM. T. BANKS,
ALEXANDER WHITELAW."

The children of David Whitelaw were B. R. Whitelaw, a son; E. C. Whitelaw, a daughter, who intermarried with W. B. Yager, from whom she was subsequently divorced; and a son, I. D. Whitelaw, who died in the year 1865, unmarried and intestate.

The defendant in the issue also offered in evidence the several deeds and judgments referred to in the opinion of the court. From these deeds it appears that B. R. Whitelaw had become the sole owner of the interest which Mrs. Yager and the deceased brother, I. D. Whitelaw, had taken by the will of their father in his real estate, and that he therefore owned said lands subject to the interest therein of his mother, Mrs. Mary Whitelaw; and later, that he sold and conveyed to Mrs. Yager about 200 acres of this land.  The judgments were offered to show the indebtedness of Mrs. Yager to her brother, B. R. Whitelaw.  There was also offered in evidence by the said defendant the following statement made by Mrs. Yager :

"AUGUST 14, 1877.

*Statement made by Mrs. E. C. Yager.*     ·

" Dr. H. A. Sims, by intimidation and persuasion, if I did not convey this property away my brother would take everything I had and turn me out of doors, which he has since done.  The same impression was left on my mother's mind, which seemed to excite my mother at times, and caused us both to be miserable.  The said Dr. H. A. Sims agreed to give me his property near Stanardsville, which he said was worth as much as mine.

He also agreed to take care of me my life-time, and grant to me the same privileges and liberties I always had in my own house. At the time I entered into this arrangement with Dr. Sims, I was not even myself. It was the day after my son's burial. I went home with him, and the next day signed the deed. I was in great trouble and sorrow, and knew not what I was doing, and in a short time was greatly troubled, after finding out what I had done, it being at such a great sacrifice. I knew not the value of his property until I saw the tax bill for the property. Then I was satisfied that I was greatly wronged, never believing that he would take so great advantage of me in my distressed condition.

"My mother told me she would make her will any way I wanted it, she being persuaded, and continually tormented by the said Dr. Sims that if she did not so make her will as it now stands, that everything would be taken from me and I would be thrown out of doors by my brother, which I now find was false, and I firmly believe him to be my best friend. I am willing to testify on oath that the whole affair concerning my mother's will, and my own arrangement with him, is fraud from beginning to ending to throw my brother out of his just deserts ; and I am willing further to testify that he has not complied with any contract he has ever made with me. He also urged me to give up my life-right in my mother's land, saying my brother would even take that. I even told him it was time enough to do that after my brother sued me, but that did not suit him, and I was finally overcome to do all this against my natural will.

"What I have said concerning the two hundred dollars paid to Judson Yager by my brother, to pay off that bankable note, is strictly correct. I am now homeless, staying with my friends, and all I ask is for him to leave me as he found me, and he take what is justly his own. I am willing to testify that the above statement is correct.

E. C. YAGER.

Attest:

W. R. SIMS."

The defendant in the issue offered the said will of David Whitelaw, the deeds, and judgments, and the statement of Mrs. E. C. Yager, for the purpose of sustaining his contention that there had always existed between B. R. Whitelaw and his mother and sister kind and affectionate relations; that this feeling had induced B. R. Whitelaw, in order to gratify his mother, to sell and convey to Mrs. Yager, after the latter had been divorced, a 200-acre parcel of his land at a greatly reduced price, in order that she might have a home; that these relations continued until H. A. Sims, a son-in-law of Mrs. Yager, interposed, and, by insinuation and otherwise, sought to have Mrs. Whitelaw make such a will as would be greatly beneficial to himself and family; that he seized upon the fact that B. R. Whitelaw was the owner of the landed estate left by his father after the death of his mother, and that Mrs. Yager was largely indebted to said B. R. Whitelaw, to excite the anxieties and apprehensions of her mother and herself by inducing them to believe that Mrs. Yager would be turned out of her home by her brother upon the death of her mother; that he so aroused the apprehension and jealousy of Mrs. Yager against her brother that she readily co-operated with the said Sims to influence and overcome the will of her mother, who is alleged to have been in an enfeebled condition of mind, in the making of her will, and in cutting off her brother with a bequest of $50.

To the introduction of the will of David Whitelaw, deceased, the deeds and judgments aforesaid, and the statement of Mrs. E. C. Yager, the plaintiffs in the issue (appellants) objected, and moved the court to exclude the same and every part thereof as evidence, but the court overruled the motion and allowed said will, deeds, judgments, and statement to be read in evidence to the jury. To this ruling and action of the court the plaintiffs in the issue excepted.

*J. G. Field, J. G. Williams,* and *F. M. & C. H. McMullan,* for the appellants.

*Barbour & Rixey* and *G. D. Gray*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This was an issue to determine whether or not a writing which had been admitted to probate was the last will and testament of Mrs. Mary Whitelaw, deceased.

Two bills of exceptions were taken upon the trial to the action of the court in admitting certain evidence.

The evidence set out in the first bill of exceptions consisted of the nuncupative will of David Whitelaw (late husband of Mrs. Mary Whitelaw), who died April 8, 1825; a deed from Elizabeth Yager (daughter of David and Mary Whitelaw) and her husband to her brothers, B. R. and I. D. Whitelaw, dated August 11, 1844, conveying all the interest which the grantors took under the will of Mrs. Yager's father; a deed from I. D. Whitelaw to B. R. Whitelaw, his brother, dated March 16, 1848, by which he conveyed all the interest in the lands which he acquired under his father's will and which he had acquired from his sister, Mrs. Yager, and her husband under the deed of August 11, 1844; a deed from B. R. Whitelaw to his sister, Mrs. Yager, dated September 10, 1867, by which he conveyed to her a certain parcel of land which he had acquired under his father's will, and through the deeds of his brother and sister; and six judgments confessed by Mrs. Yager in favor of her brother, B. R. Whitelaw, on the 20th day of October, 1877.

This evidence was offered by B. R. Whitelaw and those who claim under him to sustain their contention that her alleged will was made at a time when the testatrix was mentally incompetent to make a will; and that it was procured by improper influences.

If the party offering the nuncupative will in evidence had shown that Mrs. Whitelaw (the validity of whose will is in issue in this case) had declared her intention, prior to the

execution of her will, of disposing of her property, or of the property attempted to be disposed of by her, in accordance with the wishes of her husband as disclosed in his will, it would, as counsel argue, have been admissible in evidence as a circumstance, perhaps of no great value, tending to show that she had been improperly influenced in making a will disposing of her property in a different manner. But no such evidence was offered with the will, so far as the bill of excep-. tions shows, nor have we been able to find any such evidence in the record as would render it admissible in evidence.

Mrs. Whitelaw was not a party to either of the deeds, nor to the judgments which were offered in evidence. There was nothing in them which could in the most remote degree shed any light upon the issue submitted to the jury, so far as we have been able to see.

The general rule is that collateral facts are inadmissible in evidence, because they do not afford any reasonable presumption or inference as to the principal fact or matter in dispute, and tend to draw away the minds of the jury from the point in issue, excite prejudice, and mislead the jury. 1 Greenleaf on Evidence, sec. 52.

There is nothing in this case to take it out of the general rule, and the evidence ought to have been excluded.

The question presented by the second bill of exceptions is whether upon an issue of *devisavit vel non* the legatee or devisee, who is attacking the validity of the will, can introduce in evidence the admissions of another legatee or devisee, tending to impeach it where there are other legatees or devisees interested in sustaining the will.

This question has never been passed upon by this court in any reported case.

It was somewhat discussed in *Burton* v. *Scott*, 3 Rand. 399, but the declarations in that case were held to be inadmissible, on the ground that they were made prior to the execution of the will, the court being of opinion that the declaration of a

person as to a subject, in which he had no interest at the time, could not be given in evidence against him, if by any subsequent event an interest in the subject should be thrown upon him.

Though the admissions of a party to the record are generally receivable against him, yet, where there are several parties on the same side, the admissions of one are not admitted to affect the other, who may happen to be joined with him, unless there is some joint interest or privity in design between them; although the admissions may, in proper cases, be received against the person who made them. 1 Greenleaf on Ev., sec. 174. The fact that two or more persons have a common interest in the same subject-matter does not entitle them to make admissions respecting it as against each other, and where each claims independently of the other, though under a common instrument, neither the words nor the acts of one can bind the other. Stephens on Ev., Art. 17, p. 47; 1 Greenleaf on Ev., sec. 176. In a case like this, where the validity of the whole will is attacked, and in which it must either stand or fall as a whole, the admissions of Mrs. Yager tending to show a want of mental capacity in the testatrix, or the use of improper influence in the execution of the will, must necessarily affect her daughters (who are attempting to sustain the will) as well as herself. The only way, therefore, by which they can be protected from the influence of such admissions, for which they are in nowise responsible, is by excluding them from the jury, and by allowing the party attacking the will to introduce such evidence only as is competent against all the parties seeking to establish its validity.

This seems to us to be the correct rule in principle, and whilst the decisions of the courts of the States which have passed upon the question are conflicting, the weight of authority and the better reason is, in our opinion, in favor of the rule as laid down above. *Nussear* v. *Arnold*, 13 Serg. and R. 323; *Clark* v. *Morrison*, 25 Penn. St. 453; *Shailer* v. *Bumstead*, 99

Mass. 112, 113; *1hompson* v. *Thompson,* 13 Ohio St. 356; *Forney* v. *Ferrell,* 4 W. Va. 729; *Hays, &c.* v. *Burkham,* 67 Ind. 359; *Blakey's Heirs* v. *Blakey's Ex'r,* 33 Ala. 611.

We are of opinion, therefore, that the Circuit Court erred in admitting the evidence set out in bills of exception numbered one and two, and that for such error its judgment must be reversed, the verdict of the jury set aside, and a new trial awarded. This being so, it will be unnecessary to consider the other assignment of error, that the judgment was contrary to the law and the evidence.

*Reversed.*