# CHARLESTON

## HOLLEN v. CRIM & PECK.

Submitted June 17, 1907.     Decided October 29, 1907.

1. ERROR, WRIT OF—*Harmless Error—Admission of Evidence.*
   Refusal to strike out at the time it is offered objectionable evidence is not reversible error, if such evidence is subsequently stricken out upon a motion to exclude the plaintiff's evidence. (p. 454.)

2. SAME.
   In a trial before a jury, admission in evidence of collateral facts, or those incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, does not constitute prejudicial error; although such facts if relevant would be inadmissible, under section 23, chapter 130, Code, as relating to personal conversations or communications with a deceased person. (p. 454.)

3. WITNESS—*Cross Examination as to Collateral Matters.*
   Responses by witnesses to questions on cross-examination not relating to any subject as to which the witness had been interrogated in chief, nor to any matter concealed or tending to contradict, explain or modify any facts testified to, or to rebut or modify some inference which might otherwise be drawn from matters testified to by the witness, rendering the cross examination proper or pertinent, and which responses are collateral to the real issue, are binding on the party on whose behalf the cross-examination is conducted. (p. 454.)

4. SAME—*Testimony of Parties or Persons Interested against a Decedent.*
   Section 23, chapter 130, Code, does not prohibit a son of the plaintiff, not a party to the suit nor interested in the event thereof in respect to his property rights; from testifying on behalf of the plaintiff as to personal conversation or communication with a deceased person. (p. 455.)

5. EVIDENCE—*Relevancy.*
   Evidence wholly irrelevant and collateral is inadmissible as tending to draw away the minds of the jury from the point in issue and mislead them. (p. 456.)

6. ERROR, WRIT OF—*Review—Verdict.*
   The verdict of a jury, depending on the weight of oral testimony and the credibility of witnesses, will not be disturbed unless there has been a plain miscarriage of justice. (p. 457.)

Error to Circuit Court, Barbour County.

Action by Levi T. Hollen to recover the amount of a note

as for money had and received for his use against E. H. Crim, and M. Peck, executors of J. N. B. Crim, deceased. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

M. PECK, for plaintiff in error.

WM. T. GEORGE, for defendants in error.

MILLER, PRESIDENT:

June 15, 1894, M. N. O'Brien made a note to Levi T. Hollen at six months for $198. April 26, 1897, Hollen delivered this note to J. N. B Crim, whose receipt therefor concluded " to collect if I can." At the time he received this note Crim had pending a chancery suit against O'Brien and others to subject land to the payment of sundry judgments recovered by him, aggregating a large amount. The land of O'Brien involved consisted of a tract of 645 acres and a tract of 150 acres, the latter then subject to the lien of a deed of trust in favor of another creditor for about $1100. The sale took place February 16, 1898, pursuant to decree of May 28, 1897, and was confirmed by decree entered February 23, 1898, Crim having become the purchaser of the larger tract at $3250 and one Hall of the other at $1030. There was evidence that these lands were actually worth from $12 to $15 per acre. Shortly after Crim's death January 11, 1905, the plaintiff demanded of his executors this note. It not being produced, Hollen on September 5, 1905, brought suit before a justice against the executors to recover the amount of the note as for money had and received for his use. The justice decided the case in favor of the executors, and Hollen appealed to the circuit court, wherein the case was tried before a jury, resulting in a verdict and judgment in favor of the plaintiff for $198 with interest and costs; and the executors have brought the case here upon a writ of error. The errors assigned relate to admission and rejection of evidence, and to the refusal of the court to set aside the verdict and grant a new trial.

On the trial before the jury, the contention of the plaintiff was that Crim had collected the note, or, if not, had power to do so but suffered it to remain in his hands until barred by the statute of limitations. At the time of

the trial in the circuit court, the note had been found by his executors among some old papers belonging to Crim, and was admitted in evidence. In support of his claim that Crim had collected the note the plaintiff proved by Joseph O'Brien, a brother of M. N. O'Brien, and by his son, Robert Hollen, who worked for the O'Briens, that Joseph O'Brien had delivered to Crim some three or four hundred thousand feet of lumber, and of the proceeds he left in Crim's hands something over $200 to the credit of his brother, M. N. O'Brien, to be applied upon some debts of the latter, but that, as no settlement had been had between Joseph and Crim, the matter was left in that condition at the time of Crim's death. Robert Hollen testified to a conversation with Crim after he received the lumber, in which Crim stated that this lumber was better than anticipated, that the O'Brien note was all right, and that he thought he would be able to collect it. Joseph O'Brien and other witnesses also testified that at the time Crim purchased the land of M. N. O'Brien at the judicial sale thereof he did so under a secret arrangement with him and M. N. O'Brien that it should be bought in by Crim for their benefit; that in the interest of this purchase others were deterred by them from bidding on the land; that afterwards M. N. O'Brien, in order to get Crim to release his claim to the land, offered to repay Crim all he owed him. The evidence showed that M. N. O'Brien had remained in continuous possession of the land so purchased by Crim, farming and improving it and paying all taxes. There was much other evidence offered by the plaintiff relating to the subject, but the above were the main points covered.

The defendants relied upon the production of the note as evidence of non-payment, and the fact, testified to by Melville Peck, one of the executors, that Crim was a business man and kept account of his daily collections, whose books would most likely show payment of the note if made. The executors made no attempt to show what application had been made of the proceeds of the lumber, or that they had been applied differently than claimed by the plaintiff, or that the $200 had been or should be applied otherwise than on the note.

M. N. O'Brien testified on behalf of the plaintiff as follows: "Q. Did you ever pay this note to Mr. Hollen? Ans. No, sir. Q. Did you ever pay it to any other person? Ans. Yes, sir." The court overruled the defendants' objection to the last question and answer, but subsequently, upon the motion to exclude all the plaintiff's evidence, did strike out this testimony of payment. But it is nevertheless insisted that the answer was equivalent to a statement by O'Brien that he had paid the note to Crim—prohibited by section 23, chapter 130, Code—and that it was reversible error for the court to refuse to strike it out in the first instance. We know of no rule of law controlling the court as to time in its ruling upon the admissibility of evidence. Much must necessarily be left to the discretion of the trial judge in such matters. Any error the court may have committed in the first instance, was certainly cured by striking out the objectionable matter on the motion to exclude the plaintiff's evidence.

On cross-examination M. N. O'Brien was asked: "Wasn't your property all sold from you in 1897? Ans. I sold and gave all of it to Mr. Crim and never got any credit for it, and he held the other in his possession in trust." The refusal to strike out this answer is made the subject of the second bill of exceptions. Was this action of the court error? It is claimed this answer related to a personal transaction or communication between the witness and the decedent Crim, which the witness, being interested in the result of the suit, is precluded by section 23, chapter 130, Code, from giving in evidence. Plaintiff claims that, the debt being barred by the statute of limitations, the witness could not be said to be so interested, and, not being a party to the suit, was not precluded. It has been held that one discharged in bankruptcy is relieved from the inhibition of the statute, for it may then be said he does not testify in his own favor. *Reynolds* v. *Callaway*, 31 Grat. 436. But we can not say from any rule or precedent found that this case has any application to the statute of limitations. The statute of limitations is a personal plea, which may or may not be interposed; or the debt may be revived by a new promise. We do not think, however, this question fairly arises. The question to which the answer was given did not relate to

any subject as to which the witness had been interrogated in chief; nor to any matter that could be said to have been concealed, or to facts really tending to contradict, explain or modify any facts testified to, or to rebut or modify some inference which might otherwise be drawn from the matters testified to by the witness which would render the cross-examination proper or pertinent. 2 Elliott on Ev. section 973. The theory of the defendants' counsel in propounding the question no doubt was that if the witness answered (as he anticipated) that his real estate had all been sold (as was subsequently shown in evidence) it would tend to contradict the witness' claim of payment; but we do not see how this evidence would have contradicted the main fact relied upon —delivery of the lumber in payment of the note. The fact of the delivery of the lumber to Crim was not denied, nor its application otherwise explained. In our opinion the matter covered by the question and answer should be treated as collateral to the real issue, and, having been brought out by the defendants on cross-examination, they are bound by the answer. 1 Greenleaf on Ev. sections 52, 448, 449; *Whitelaw* v. *Whitelaw*, (Va.). 32 S. E. 458; *Watts* v. *State*, 5 W. Va. 532; *Corder* v. *Talbott*, 14 W. Va. 277. The question propounded was not confined to real estate. The witness in his answer evidently had in mind the lumber delivered to his credit, and also the arrangement with Crim to buy in his real estate at the sale thereof and hold it for him in trust; and, with this view, we are not prepared to say that the answer was not responsive to the question. The defendants' counsel did not ask the witness for explanation, nor attempt to affect the answer by further cross-examination, but promptly dismissed the witness, and has made the action of the court on his motion to strike out a subject of error for which he asks this Court to reverse the judgment below. We are of opinion that the court did not err to the prejudice of the defendants in overruling his motion,

Robert Hollen, a son of and witness for plaintiff, was asked in chief—" Mr. Hollen, did you ever have any conversation with Mr. J. N. B. Crim, in his lifetime, about a note that he had gotten from your father, L. T. Hollen, upon M. N. O'Brien?" and answered, "Yes, sir;" and he

was thereafter permitted to testify respecting conversations and communications between him and the deceased. This action of the court was made the subject of the third bill of exceptions. We do not understand this point is seriously urged in the argument of counsel in this Court. The suggestion is that Hollen, because the son of the plaintiff, was an incompetent witness against the decedent's estate as a person interested in the event of the suit. He was not a party to the suit; and we think his testimony was competent. He was not interested in the result of the suit in any sense that would preclude his testimony.

Bill of exceptions number 5 relates to the action of the court below in excluding from the evidence a deed of trust of April 20, 1885, from the plaintiff to Melville Peck, trustee, to secure to J. N. B. Crim the payment of a note for $300, and a release thereof by Crim of November 29, 1900. It is stated that the purpose of introducing this evidence was to show that the plaintiff was indebted to Crim between the date of the deed and the date of the release, and to have the jury infer therefrom that Crim took the note on account of that particular indebtedness and not (as the receipt expressed it) for collection. The offer of this evidence was not accompanied by any oral testimony tending to show that the indebtedness secured was paid by the transfer of the note. In our opinion the evidence was wholly irrelevant and collateral, and would have tended to draw away the minds of the jury from the point in issue and mislead them. Such evidence is improper and should not be received. *Whitelaw* v. *Whitelaw, supra;* 1 Greenleaf on Ev. section 52; *Watts* v. *State, supra; Hartman* v. *Evans*, 38 W. Va. 669; *Repas* v. *Richmond*, 99 Va. 508.

Bills of exception 4 and 6, the latter containing a certificate of the evidence, relate to the action of the court in overruling the motion to strike out the plaintiff's evidence and overruling the motion to set aside the verdict and grant a new trial. The first motion was equivalent to a demurrer to the plaintiff's evidence, and, from what has already been said in reference to the evidence, we think it was properly overruled. We are of opinion that the second motion was also properly denied. It is unnecessary to cite the many

decisions of this Court governing in such cases. The case was peculiarly one for the jury; and, as no errors prejudicial to the rights of the defendants appear to us from the record, we are of opinion to affirm the judgment of the circuit court.

*Affirmed.*