[No. 11076.  Department Two.  April 1, 1913.]

The State of Washington, *on the Relation of Philip R. Waughop, Plaintiff*, v. The Superior Court for King County, *Respondent.*[1]

Marriage—Annulment—Power of Courts—Constitutional Law —Civil Rights—Infringement.  The superior court has no power, in an action for the annulment of a marriage, to order the parties to meet for a conference, with a view to adjusting their differences, as it would be an infringement of personal rights.

Injunction—Notice—Ex Parte Application.  A court cannot, on *ex parte* application, issue an order for parties litigant to meet, inasmuch as its effect is to issue a final injunction without notice.

Application filed in the supreme court March 10, 1913, for a writ of prohibition to the superior court for King county, Everett Smith, J., to prevent the enforcement of an order requiring plaintiff to meet the defendant.  Granted.

*Walter A. Keene*, for relator.

*Thomas A. Mead*, for respondent.

Morris, J.—Relator and his wife, Nellie Waughop, were married February 4, 1913.  A few days thereafter, relator commenced an action to annul the marriage upon the ground that, at the time it was contracted, he was mentally incompetent and suffering from the effects of certain drugs.  On February 19, 1913, on the *ex parte* application of relator, the respondent judge issued an order, enjoining the wife from visiting or entering the residence of relator, or molesting or in anywise interfering with, or going about, the relator or his mother, with whom he was residing.  The wife then appeared and contested this order and the power of the court to make it.  Some sort of hearing was had, the nature of which is not disclosed in the record before us, at which time the court suggested a meeting of the husband and wife, ac-

[1]Reported in 130 Pac. 1139.

companied by their attorneys, for the purpose, evidently, of ascertaining whether the relator was bringing the action of his own free will or, as evidently suggested to the court by the wife, acting under the influence of others. The wife was dissatisfied with the result of this meeting, and through her counsel gave oral notice to counsel for relator that application would be made to the court to fix the time and place for a second meeting. Counsel for relator, claiming lack of sufficient notice, refused to attend upon the court; and on the application of the wife, the court made an order directing the parties to appear at the office of a certain physician on March 10, accompanied only by their respective attorneys, for the purpose "of talking over their affairs." Counsel for relator thereupon came to this court and made application for a writ of prohibition, to prevent the court below from enforcing this last order. Upon this application, a show-cause order was issued, upon the return of which respondent judge filed his return, and the matter was submitted to this court for final determination.

The writ as prayed for must issue. The trial court has no power or authority, in an action of this character pending before him, to order the parties to meet in the hope of bringing about an amicable adjustment of their differences. As to whether a trial court should suggest such a meeting is a personal matter for each judge to determine for himself, but when he goes beyond that and issues the solemn mandate of the court compelling parties to submit thereto or subject themselves to possible punishment for a refusal to obey, he goes beyond any authority vested in him by the law. The law will not uphold nor sanction such an infringement upon personal rights. Although the order of February 19 is not before us for review, we think it proper to say that this order was issued without legal warrant. So far as the private rights of parties litigant are concerned, there is no distinction between an action for the annulment of a marriage and any other equitable proceeding involving the rights of

the parties to do or not to do a certain thing. If, on a proper showing, a trial court is satisfied that there is grave danger of interference with personal or property rights, an *ex parte* restraining order may be issued upon the application for a show-cause order, upon the return day of which the matter may be determined after full notice and opportunity to guard the rights of the respective parties. But no court has the power to issue a final injunction—which was the effect of the order of February 19—upon an *ex parte* application. If this wife believed that relator was acting under restraint and duress when he commenced his action to annul the marriage, the law provides a simple way to bring him into court to have that fact judicially determined, with proper safeguards for the rights of all parties. The question submitted by this application seems so plain to us that we refrain from further discussion.

Let the writ issue.

CROW, C. J., MAIN, ELLIS, and FULLERTON, JJ., concur.