# CHARLESTON.

## KEENE v. CITY OF HUNTINGTON.

### Submitted February 27, 1917.   Decided March 6, 1917.

1. MUNICIPAL CORPORATIONS—*Liability—Injury to Realty.*

    A municipal corporation is liable in damages for injury to real estate, where the occupancy thereof is rendered less desirable because of noisome odors emitted from an incinerator plant erected and operated by such municipal corporation near to such real estate, and because of the deposit thereon of ashes and other offensive substances by such incinerator plant. (p. 715).

2. DAMAGES—*Entire or Separable—Damages—Injury to Realty— Measure of Damages—"Permanent Injury."*

    If such plant is one of the instrumentalities constructed by said city for the purpose of carrying out its legitimate powers, and is fit to be used for that purpose as a permanent structure, and such damage to such nearby real estate results from the construction and proper operation of such plant, then the injury is a permanent one, and entire damages must be recovered therefor in a single suit, and the measure of such damages is the diminution in the value of such real estate by reason of the construction and proper operation of such plant. (p. 724).

3. SAME—*Temporary Injury to Realty—"Temporary Injury"—Successive Actions.*

  If the injury to such adjoining property arises solely from the negligent or improper operation of such plant, then such injury is of a temporary character, and damages for such injury must be recovered in successive actions. (p. 724).

Error to Circuit Court, Cabell County.

Suit by Lizzie Keene against the City of Huntington. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*F. M. Livezey,* for plaintiff in error.
*Daugherty & Riggs,* for defendant in error.

RITZ, JUDGE:

In the month of May, 1912, the plaintiff purchased a house and lot situate in the city of Huntington on Second Avenue, between Fourth and Fifth Streets. After her purchase of the property she made certain improvements thereon and has been occupying it as a residence ever since. In the summer of 1914 the defendant purchased four lots on Second Avenue immediately west of the residence of the plaintiff and erected thereon an incinerator plant, at which plant it burns garbage, dead animals, and all kinds and character of refuse which it is deemed expedient to collect and destroy. The plaintiff claims that ever since the operation of this plant her property has been very much injured; that there results from the burning of this decadent organic matter noisome odors which are very offensive; that smoke settles upon her house and upon her furniture, and that there is left as a result of this smoke coming in contact with the house and furniture and other property a greasy offensive substance; that this smoke also deposits small particles of inorganic matter. She brought this suit to recover damages resulting from this injury, claiming that the value of her property has been materially decreased. Upon the trial she introduced a number of witnesses who testified to the facts in regard to the deposits left by the smoke, and to the offensive odors and other injuries claimed from the incinerator plant, and also witnesses as to

the difference in the value of her property immediately before and immediately after the construction of the plant. The defendant introduced witnesses to prove that this plant was the most modern plant devised for the purpose of disposing of garbage; that it was erected by the city at a cost, for the plant and the ground upon which it is situate, of something like twelve thousand dollars; that it was erected in a skillful and proper manner; and that the plant ever since it has been in operation has been operated properly and skillfully. It also introduced a number of witnesses who testified that there were no odors arising from the operation of this plant; that there were no deposits left by the smoke upon articles with which it came in contact; and that there were no ashes or other substances deposited upon the ground by the plant, except that some of the defendant's witnesses stated that there were small particles of charred paper at times emitted from the stack. Before the evidence was introduced the jury was taken to the plant to view it in operation. Again, at the conclusion of the evidence, on motion of the defendant, the jury was permitted to view the plant in operation and the effects of such operation. The cause was then submitted to the jury upon the court's instructions to the effect that if the plaintiff's property was affected in the way she and other witnesses testified, and was thereby injured, she was entitled to recover, and the measure of her damages would be the difference between the value of her property immediately before and immediately after the said incinerator plant was constructed and put in operation. The defendant contended upon the trial that the plaintiff in any event should only be allowed to recover temporary damages, that is, such damages as were proved to have been sustained prior to the institution of the suit, and this is the main contention in this Court.

There are some other points raised by the defendant which we will dispose of before proceeding to the consideration of the proposition upon which the defendant mainly relies.

In the trial of the case the defendant offered to prove by witnesses T. S. Scanlon and O. H. Wells that they had observed other incinerator plants of the same type as this one

in operation, and no odors arose from the operation of these other plants, and no sediment was deposited from the smoke. This evidence was rejected by the court. Both of these witnesses testified as to the operation of the particular plant in question. They observed its operation many, many times, and both testified positively and emphatically that at no time did this particular plant ever discharge any smoke containing sediment, nor was there ever any greasy or slimy substance deposited from the smoke, or any odors arising from the operation of the plant. In view of their positive evidence as to the effect of the operation of the plant in question, it can hardly be conceived why it was thought material to prove by them what they observed as to the operation of other similar plants. Ordinarily evidence of collateral facts is excluded from the consideration of the jury as having no particular force in proving the fact in issue. 1 Greenleaf on Evidence, §52; *Whitelaw* v. *Whitelaw,* 96 Va. 712 (32 S. E. 458); *Hartman* v. *Evans,* 38 W. Va. 669. We fail to see how the statements of these two witnesses as to their observations of other plants in operation could in any wise strengthen their positive statements as to the operation of this particular plant.

It is also assigned as error that the court permitted the plaintiff to prove that odors arose from the garbage wagons being driven into the incinerator, and that it was error to permit evidence to show that pieces of charred paper were emitted from the stack of the incinerator, for the reason that these matters were not charged in the declaration. It is charged in the declaration that the plaintiff's property is affected by the operation of this plant because of offensive odors coming therefrom, and particularly from the deposit of ashes therefrom. It is specifically charged in the declaration that some of the odors affecting the plaintiff's property arise from the wagons containing garbage while they are being hauled into the plant, but even if this were not so it clearly appears that the deposit of the garbage in the plant is one of the things necessary to be done in order to its operation, and no specific averment of offensive odors arising from the wagon would be necessary when there is a general

averment of injury by reason of offensive odors arising be-
cause of the operation of the plant. The defendant repeat-
edly moved the court to exclude the evidence of the deposit
of charred paper on plaintiff's lot. It is true the court over-
ruled these motions, but at the end of her evidence the plain-
tiff submitted to such motions, and while the record does not
show that the court took any particular action on it, we must
conclude that where the defendant has asked for a particular
thing to be done, and the other party submits to it, it is
granted. Even if this were not so these deposits of charred
paper emitted from the stack must be taken to be included in
the terms used in the declaration. It is charged in the declara-
tion that deposits of ashes and other substances are made
upon the plaintiff's lot which are emitted from the incinera-
tor. This is sufficient to include the deposit of this charred
paper, and the court committed no error in admitting the
evidence to the jury.

The remaining proposition, and the one upon which chief
reliance is placed, is as to the character of the plaintiff's in-
jury. The plaintiff contends that in as much as it is shown
in this case that the incinerator plant is constructed as a
permanent public improvement by the city for the carrying
out of its corporate powers, and from the proper operation
of this plant injury results, the damages are permanent. The
defendant, on the other hand, contends that the plaintiff
should only be allowed such damages as she has sustained by
way of decreased rental value of her property, or otherwise,
up to the time of the institution of the suit; that the nui-
sance, if any, is of a temporary character, and one which
it might well be supposed the defendant would abate rather
than be subjected to permanent damages therefor. There
seems to be practical uniformity in the expression of the rule
as to when permanent damages will be allowed in a case like
this. Wood in his work on Nuisances, at §869, states the doc-
trine thus: "Where the damages are of a permanent charac-
ter and go to the entire value of the estate affected by the
nuisance a recovery may be had of the entire damages in one
action. Thus, in an action for overflowing the plaintiff's
land by a mill-dam, the lands being submerged thereby to

such an extent, and for such a period, as to make it useless to the plaintiff for any purpose, the jury were instructed to find a verdict for the plaintiff for the full value of the land. So, too, when a railroad company by permanent erections imposed a continuous burden upon the plaintiff's estate, which deprived the plaintiff of any beneficial use of the portion of the estate so used by it, it was held that the whole damage might be recovered at once; but where the extent of a wrong may be apportioned from time to time, and does not go to the entire destruction of the estate, or its beneficial use, separate actions not only may, but *must* be brought to recover the damages sustained. So, too, when a nuisance is of such a character that its continuance is *necessarily* an injury, and it is of a permanent character so that it will continue without change from any cause but human labor, it is held that the damage is original, and may be at once fully compensated.''

The doctrine is similarly stated in Joyce on Nuisances, §495: ''Where damages are of a permanent nature and affect the value of the estate a recovery may be had of the entire damages in one action; but where the extent of the wrong can be apportioned from time to time separate actions should be brought to recover the damages sustained. So where a permanent injury is occasioned by a permanent lawful, public structure, damages past, present and future, may be recovered in one suit. And where the damage to plaintiff's land is permanent and irremediable he can recover in one action all present and prospective damages, but if the injury is temporary in character and capable of being avoided without permanently injuring plaintiff's land, damages can be recovered only up to the commencement of the action, as in such case the nuisance would be a continuing one. Again, where a railway is constructed without leaving sufficient space between the embankments, or it fails otherwise to provide against freshets reasonably to be expected, an injury due to that cause may be compensated for by the assessment of present and prospective damages in a single action. The measure of damages is the difference in the value of the plaintiff's land with the road so improperly

constructed, and what would have been its value had the road been skilfully constructed.''

In Sedgwick on Damages, at §95, the author lays down the doctrine to be: ''If the injury is caused by erecting a structure or making a use of land which the defendant has a right to continue, the injury is regarded as committed once for all, and action must be brought to recover the entire damage, past and future.''

Sutherland on Damages §1046, is to the same effect.

In this state a corresponding rule has been laid down in a number of cases. In the case of *Hargreaves* v. *Kimberly,* 26 W. Va. 787, it is stated as follows: ''Where the cause of the injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue the cause, the entire damage may be recovered in a single action; but where the cause of the injury is in the nature of a nuisance and not permanent in its character but of such a character that it may be supposed, that the defendant would remove it rather than suffer at once the entire damage, which it might inflict if permanent, then the entire damage, can not be recovered in a single action; but actions may be maintained from time to time, as long as the cause of the injury continues.'' *Spencer* v. *Railroad Co.,* 23 W. Va. 406; *Smith* v. *Railroad Co.,* 23 W. Va. 451; *Watts* v. *Railroad Co.,* 39 W. Va. 196; *Guinn* v. *Railroad Co.,* 46 W. Va. 151; *Pickens* v. *Boom Co.,* 51 W. Va. 445.

The difficulty is not in ascertaining what the general rule is, but as is the case in most instances it arises in the application of the rule to the particular case. The rule as above stated is announced by the courts of this country and of England with practical unanimity, and it has been applied in a multitude of cases. Its application to the case here will be aided by citing some of the cases in which it has been applied by the courts of this and other jurisdiction, and the manner of its application. *Smith* v. *Railroad Co.,* 23 W. Va. 451, and *Spencer* v. *Railroad Co.,* 23 W. Va. 406, were suits to recover damages by owners of real estate abutting on a street, occasioned to them by the laying in the street of tracks of the railroad company. The court held in these cases, un-

der the provisions of our constitution prohibiting the taking
or damaging of private property for public use, without
just compensation, that the railroad company would be liable
for such injury as was suffered by these property owners,
and it held further that the construction and operation of a
railroad in a public street was such a permanent obstruction,
and the injury flowing therefrom was of such a permanent
character, that damages therefor must be recovered in a
single action, and that successive actions might not be main-
tained on account thereof.

In *Watts* v. *Railroad Co.*, 39 W. Va. 196, it was held that
where a railroad company condemns or purchases a right of
way through the property of a land owner for the purpose
of constructing and operating thereon a railroad, it will be
taken that the owner has been compensated for all the injury
and damage to the residue of his land which would naturally
flow from the proper construction and proper operation of
such railroad, it being held that such damages are in their
nature permanent because of the character of permanence
of the railroad.

In *Guinn* v. *Railroad Company*, 46 W. Va. 151, it was held,
following the cases of *Spencer* v. *Railroad Co.* and *Smith* v.
*Railroad Co.*, *supra*, that the owner of property abutting on
a street on which a railroad is built is entitled to recover per-
manent damages for the injury to his property caused by the
construction and operation of such railroad in such street.

*Southern Ry. Co.* v. *McMenamin,* 113 Va. 121, was a suit
to recover damages to property because of the construction
and operation of railroad yards and a coal chute near the
plaintiff's property, which it is claimed was damaged by
soot and smoke caused from firing engines, and dirt arising
from the operation of the same. The court held that plain-
tiff was entitled to recover permanent damages in one action
for the injury inflicted upon his property by the construction
and proper operation of such coal chute and railroad yards,
they being necessary to the operation of the railroad.

*Virginian Railroad Co.* v. *London*, 114 Va. 334, was a suit
to recover damages arising from injury to plaintiff's prop-
erty by the construction near thereto by the Virginian Rail-

way Company of its round house, machine shop and coal tipple, it being contended that the operation of these plants near the plaintiff's property caused it to be infected with smoke and dirt, and otherwise injured. The court held that these structures were of such character that it could be presumed that the railroad company intended them as a permanent part of its plant, and that the plaintiff was entitled to recover permanent damages for the injury inflicted on his property, and that the measure of his damages was the difference between the value of his property immediately before the plants were constructed and put in operation, and immediately thereafter.

In *McLaughlin* v. *City of Hope,* 47 L. R. A. (N. S.) 137 (Ark.—155 S. W. 910), it was held that where a city turns its sewage into a stream which runs by plaintiff's property, and pollutes the water therein, the plaintiff was entitled to recover permanent damages for the injury resulting to his property therefrom, it being held that a sewage disposal plant was one of the permanent instrumentalities used by the city in the proper exercise of its functions.

*Powers* v. *The City of Council Bluffs,* 45 Iowa 652, was an action for damages for injury to plaintiff's property by the construction of a ditch adjacent thereto by the city. It was held in that case that the construction of the ditch by the city was such a permanent structure, and inflicted upon the plaintiff's property such injury, as that the same must be recovered in a single action, and that if he did not bring such action within the period provided by the statute it would be barred by limitation.

In *Bizer* v. *Power Co.,* 70 Iowa 145, it was held that where the defendant built a permanent dam across a river and caused the water to flow back on plaintiff's land, this was a permanent injury for which damages must be recovered in a single action.

In *Construction Co.* v. *Kroeger,* 17 Idaho 384, 28 L. R. A. (N. S.) 968 (105 Pac. 1070), it was held that damages arising by reason of the construction of a railroad so near to the property of another that it is injured thereby is single and permanent, and must be recovered in one suit brought for

the purpose, and that the measure of damages is the difference between the actual cash value immediately preceding the injury and the actual cash value after the injury, with legal interest thereon to the time of the trial.

The case of *Gas Light & Coke Co.* v. *Graham*, 28 Ill. 73, was a suit to recover damages for the destruction of plaintiff's water supply which consisted of a well, by reason of the construction of gas works so near thereto that the water in said well was rendered unfit for use. The court held that this constituted a permanent injury to the plaintiff's property, and that he could recover damages for the injury in a single suit.

*Railroad Co.* v. *Maher*, 91 Ill. 312, was a suit to recover damages for injury to the plaintiff's dock by the construction of a pier by the railroad company, so that the means of approach to the dock were obstructed. The court held that the construction of the pier was such a permanent structure by the railroad company as to give to the plaintiff the right to recover single damages, and that the recovery of such damages would bar any future action therefor.

In *Montmorency Gravel Road Co.* v. *Stockton*, 43 Ind. 328, it was held that the assessment of damages to a property owner for land taken and damages to the residue by reason of the construction of a road through his land, included the inconvenience and injury which would arise to the land by the operation of the road in its ordinary way, and that such damages must be awarded once for all.

A similar holding was made in the case of *Plank Road Co.* v. *Railroad Co.*, 13 Ind. 90.

In *Oil Co.* v. *Ogle*, 42 L. R. A. (N. S.) 714 (Ind.—98 N. E. 60), it was held where the productive power of land was permanently affected by the discharge thereon of oil and salt water that permanent damages could be recovered therefor.

In *Fowle* v. *Railroad Co.*, 112 Mass. 334, it was held that permanent damages were recoverable against a railroad company for injury caused to plaintiff's lot by having the water turned against the same from the construction of the defendant company's road bed, and that the damages must be recovered once for all, it being held that the railroad com-

pany's road bed was such a permanent structure as must be reasonably contemplated to continue indefinitely.

In *Babb* v. *Curators of the University of Missouri,* 40 Mo. App. 173, suit was brought to recover permanent damages to plaintiff's land by reason of the maintenance near thereto of sewage disposal vaults, in which were deposited all sorts of sewage and garbage from the University, and from which arose odors and gases and infectious germs, all of which were injurious to plaintiff's land. It was held that this sort of a sewage disposal plant must be treated as such a structure as the defendant would permanently maintain, and that the injury to the plaintiff's land was a permanent one and recovery should be had therefor in one action. Particular attention is called to this case because of the similarity of the matter under treatment by the defendant in that case and by the defendant in the case at bar.

In *Railroad Co.* v. *Andrews,* 26 Kansas 702, it was held that permanent damages were properly recoverable against a railroad company for injury to real estate caused by the construction and ordinary operation of the railroad.

In *Adams* v. *Railroad Co.,* 18 Minn. 265, it was held where a railroad lawfully constructs its tracks and operates them in a street adjacent to the plaintiff's property, and injury results to the plaintiff's property from such operation, that permanent damages may be recovered therefor.

In *Railroad Co.* v. *Combs,* 10 Bush 382, the court held that damages for injury to the ingress and egress from plaintiff's property by the construction and operation of a railroad in front thereof, must be recovered in a single action, and that the measure of plaintiff's damages was the difference in the value of his property immediately before the construction and operation of said railroad and immediately thereafter.

*Railroad Co.* v. *Esterlee,* 13 Bush 667, was a suit for damages to recover for injury to real property by reason of the construction and operation of a railroad by the defendant, and the court held that single and permanent damages were recoverable—and that the measure thereof is the diminution

in value occasioned by the location of the railroad tracks and the use to which they are being put.

*Rhodes* v. *City of Durham* (N. C.) 81 S. E. 938, was a suit to recover damages from a municipal corporation for the pollution of a water course by the discharge of sewage therein. The court held that the plaintiff had a right to recover permanent damages because of the fact that the arrangements made by the city for the discharge of this sewage into the stream were of such a character as lead to the conclusion that the same would be maintained indefinitely, and that the measure of the plaintiff's recovery was the diminution in the value of his property by reason of the pollution of the stream.

In *Railroad Co.* v. *Lellyett,* 1 L. R. A. (N. S.) 49 (Tenn.), the court held that in an action for damages for injury to property by the location and operation of railroad terminals near thereto the injury is permanent, and the measure of damages is the diminution in the value of the property occasioned thereby.

A similar holding was made by the Supreme Court of Oklahoma, in the case of *Railroad Co.* v. *Drew,* 44 L. R. A. (N. S.) 38 (130 Pac. 1139).

The Supreme Court of Texas, in *Rosenthal* v. *Railroad Co.,* 79 Tex. 325, made a similar holding, and held that the depreciation in the value of the property caused by the railway is the most certain measure of damages to the owner.

In *Gas & Electric Co.* v. *Belden,* 27 L. R. A. (N. S.) 237 (Tex.—123 S. W. 119), the court held that for injury resulting from the operation of a lighting plant the plaintiff was entitled to recover permanent damages, and the measure of his recovery was the diminution in the value of the property by reason of the operation on neighboring property of such plant.

A similar holding was made in the case of *Knapp* v. *Railway Co.,* 6 Upper Canada C. P. R. 187.

This review of the authorities indicates the character of injuries to real estate which the courts have construed to be permanent within the meaning of the rule above laid down. From them the rule is deduced that where the injury to real

estate is such as to affect its value permanently, permanent damages can be recovered for that injury; or, if the character of the agency, from the operation of which the injury arises, is such that it can reasonably be expected to continue for an indefinite time, and its operation in the ordinary and proper way produces the injury complained of, the plaintiff not only can, but he must, if he would recover damages at all, sue and recover permanent damages. He can have but one suit for the purpose. In this case there is no dispute but that the incinerator constructed by the defendant was constructed in a proper manner. There is no dispute but that it has been during its continuance operated in a proper manner, so that if injury has resulted to the plaintiff's property it has been because of the construction and operation in a proper manner of the incinerator by the defendant. This plant was constructed at a cost to the city of something like twelve thousand dollars. It is, as is shown by the testimony of the city officials, an absolute necessity, and it cannot be presumed that the city will discontinue, as is argued by counsel for the defendant, the operation of this plant. If it has injured the plaintiff's lot this injury has inured to the benefit of all of the citizens of the City of Hutnington, and it is not right that the plaintiff alone should be compelled to sustain this loss. It is true, a large number of witnesses testified that the conditions claimed by the plaintiff, and witnesses testifying on her behalf, did not exist, and never did exist, and that no injury results to the lot by reason of the construction and operation of this plant. This was a disputed question of fact. Not only did the jury have the witnesses before it and observe their conduct and demeanor, but before the trial was commenced the jury was taken to view the plant in operation, and after the trial was concluded it was again taken upon the ground and viewed the plant in operation, and with all of these aids before it it came to the conclusion that the plaintiff's property had been injured by reason of the operation of this plant. Its findings on this question of fact cannot be disturbed by this Court. We are forced to the conclusion that the injury, if any, to the plaintiff's property by the construction and operation of this plant

is a permanent one; that it can reasonably be assumed that the plant will be operated by the city for the purpose for which it was constructed indefinitely, and this being so the court below properly allowed a recovery upon the basis of permanent injury.

Finding no error in the judgment complained of, it will be affirmed.

*Affirmed.*