# CHARLESTON

MONTGOMERY *et al* v. ECONOMY FUEL COMPANY.

Submitted February 19, 1907.   Decided March 26, 1907.

1.  FORCIBLE ENTRY AND DETAINER—*Civil Liability—Process.*

    A summons in an action of unlawful entry and detainer can be made returnable to any day of a term of a circuit court. (p. 621.)

2.  Mines and Minerals—*Leases—Construction.*

A lease of a tract of land for the mining of coal excepts the surface of a certain part of it for burial and cemetery purposes. The lessees have no right to take the surface of the excepted portion for any purpose of mining.   (p. 623.)

3.  Forcible Entry and Detainer—*Civil Liability—Writ of Error.*

In an action of unlawful entry and detainer a writ of error lies to this Court, but if upon consideration thereof it is found there is no error in the judgment giving recovery for the possession of the property sued for, we cannot review the action of the court in allowing damages for the detention thereof, unless the amount of such damages, exclusive of costs, exceeds the sum of one hundred dollars.   (p. 627.)

4.  Same—*Damages.*

*Quaere:*  In an action of unlawful entry and detainer, instituted in the circuit court, under chapter 89 of the Code, can damages be recovered for the detention of the property?   (p. 627.)

Error to Circuit Court, Fayette County.

Action by J. C. Montgomery and others against the Economy Fuel Company.  From a judgment in favor of plaintiffs, defendant brings error.

*Affirmed.*

W. D. Payne and J. F. Bouchelle, for plaintiff in error.

Dillon & Nuckolls, for defendant in error.

Sanders, President:

This is a writ of error to a judgment of the circuit court of Fayette county, rendered in an action of unlawful entry and detainer, brought by J. C. Montgomery and others against the Economy Fuel Company.  The summons was made returnable to the sixth day of September term, 1904, the same being the 26th day of the September of that year, and the defendant moved to quash the writ upon the ground that it should have been made returnable to the first day of the term, but the motion was overruled, and this ruling of the court is assigned as error.  Our statute, chapter 89, Code, making provision for actions of this character, was designed as an emergency statute, to give speedy remedy, and we must, in construing it, keep in mind its real purpose, and give to it that meaning which will conform to the object of

its enactment. Section 2 of that chapter provides that the summons may be made returnable to and the case heard and determined at any term of such circuit court. It is said, however, that this section does not fix any particular day for the return of the summons, and that therefore in determining whether or not it shall be made returnable to any other day except the first day of the term, we should be guided by section 2 of chapter 124 of the Code, which provides that, with certain specified exceptions, process shall be returnable " to the court on the first day of the term, or in the clerk's office to the first Monday in a month, or to some rule day," and *Gas Co. v. Wheeling*, 7 W. Va. 22, is cited to support this view. In that case it was held that a summons in an action of unlawful entry and detainer should be made returnable within ninety days from its date, and that in this respect section 2, chapter 124, Code, applied. Strong reasons are given in the opinion in that case to show why this section in that respect should apply, and to demonstrate that there should be some limit to the time between the issuance and the return of such process, and as chapter 89 did not prescribe such limitation, and as section 2, chapter 124, referred to, did do so, that this should be applied to an action of that character. There is no reason why a summons in such action cannot be made returnable to any particular day of a term of a court, and certainly there is no special reason why it should be made returnable on the first day rather than to any other day of the term, and where the statute does not specifically call for the return of such summons on the first day of a term, or to any particular day of the term, but prescribes that it shall be made returnable to the term generally, there is no reason to hold that it should be made returnable to the first day of the term. Where, however, the statute does prescribe that the process shall be returned to a particular place and on a particular day, its provisions must be complied with; and as section 2 of chapter 124 of the Code provides for the return of process in a certain way, this provision must be followed in all cases which fall within the meaning of this section. But we must not overlook section 2 of chapter 89, which provides that a summons of this character shall be returned to the term, and when we consi ler it, we conclude that the

summons in an action of unlawful entry and detainer is excepted from the operation of section 2 of chapter 124, providing that process shall be returned on the first day of a term.    A summons in an action of unlawful entry and detainer certainly cannot be returned to rules, and is held in *Gorman* v. *Steed*, 1 W. Va. 1, and if that part of the section does not apply to a return of summons in this character of action, then why should we say that it should be returnable to the first day of the term? Why apply one part of this statute and not the other, when there is no real necessity and no good reason why it should be done? As we have observed, section 2 of chapter 89 provides for its return to court, and does not require it to be done on any particular day.    It would certainly require a technical construction to give to this statute, the meaning which is contended should be given to it.

There seems to be no doubt that the defendant, at the time of the institution of this action, was in the possession of the premises which this action was brought to recover, but we are called on to determine whether or not this possession by it was unlawful, and in doing so it will be necessary to construe the coal mining lease executed by the plaintiffs to the defendant company, and under which the defendant now claims the right to the possession of the property in controversy.    By this lease a certain tract of land in Fayette county was demised to the defendant for coal mining purposes, it conferring upon the lessee only such mining privileges as are necessarily implied from the grant, with the exception that the express right was given to remove the coal from a certain seam and to use certain of the timber therefrom for the purposes af operation; and the lessors excepted from the operation of the lease a certain portion of the property embraced therein, which in the lease is denominated a reservation, and is as follows:

"It is further agreed and understood by the parties hereto that there is reserved from the terms and conditions of this lease what is known as the family graveyard, including all mineral thereon and the surface right to the lot adjoining thereto for burial and cemetery purposes, which shall include all of the ground east of said family graveyard, to a point opposite the west side of the Love property.

"The parties of the first part further reserve a right to take any of the property herein described not actually necessary for the successful operation of the lease premises herein described, if they or either of them need the same for the purpose of selling or building thereon."

By an examination of this portion of the lease, it will be found that there are three separate reservations or exceptions provided for. First, it reserves what is known as the family graveyard, including all minerals thereon; second, it reserves the surface right to the lot adjoining the family graveyard for burial and cemetery purposes; and, third, the right is reserved to take any of the property embraced in the lease not actually necessary for the successful operation of the leased premises, if the defendants, or any of them, should need the same for the purpose of selling it, or building thereon.

The first and third specified reservations are not involved in this controversy, but it is the second, which reserves the right to the lot adjoining the cemetery for burial and cemetery purposes, which is involved, and the property reserved thereby is sought to be recovered in this proceeding.

It is insisted by the defendant that this provision of the lease, called "reservation," is, in legal contemplation, a condition contractural in its nature, limiting the right of the defendant to the use of the lot in controversy, subject to the plaintiff's right to use the same for burial and cemetery purposes; that only the surface of the lot is affected by this clause of the lease, the underlying coal being granted, and it further maintains that the surface is not excepted by the terms of the lease, but only the right to use the same for such purposes. A lease granting minerals carries with it, by necessary implication, the right to enter upon the property and do all things necessary for the purpose of acquiring and enjoying the estate granted. When anything is granted, all the means of obtaining it, and all the fruits or effects of it, are also granted. There is no pretension that the surface was granted by the lease, except in so far as is necessary to produce the coal underlying the tract. Therefore, without any exception, the plaintiff would have had the right to the enjoyment of the entire surface, subject to the necessary use

thereof upon the part of the defendant in mining coal. This being so, it would hardly have been necessary to have excepted a certain portion of the leased premises, unless it was intended to absolutely exclude the defendant from the use thereof, and·retain same for the exclusive enjoyment of the plaintiff.    The property here in controversy was not granted by the terms of the lease, but was expressly excepted for cemetery purposes, which certainly means the exclusive use thereof for such purposes.    This provision is in its nature an exception, which relates to some existing component part of the thing demised, capable of being severed or distinguished from it.    Taylor on Landlord and Tenant, (9th Ed.) section 158.    "An exception is something taken out of that which is before granted by which means it does not pass by the grant but is severed by the estate granted."    McAdam on Landlord and Tenant, (3rd Ed.) section 165.

It is not contrary to any principle of law in demising a tract of land for mining purposes to exempt from the operation of the grant the surface of a small portion of the estate granted for a burying ground or for cemetery purposes.    It certainly cannot be said to be repugnant to the grant, nor is it contended that it is void for uncertainty.    It is merely the contract between the parties, by which the lessee obtains the tract of land embraced by the terms of the lease for the purpose of mining the coal underlying the same, and with the express exception of the surface of a certain portion. It is claimed, however, that that part of the exception which says it is excepted for burial and cemetery purposes contravenes the idea that it is to be for the free, absolute, exclusive and undisturbed use of the lessor, but that it is only to be had for burial and cemetery purposes, and that the use thereof upon the part of the lessee, in so far as may be necessary for the enjoyment and exercise of the rights granted by the lease, is not excluded therefrom, but that it may enter upon the surface whenever necessary for the enjoyment and exercise of the privileges conferred by the demise, when such entry and the exercise of such rights does not interfere with the use of the surface for the purposes of a burying ground.    Such construction would be contrary to the very nature and purpose of the exception. It

would be utterly inconsistent to say that though a reservation was for burial ground and cemetery purposes, that a coal mining company, in operating its lease, could enter upon that particular ground and use it for the purposes of its operation. The very fact that it is' excepted for a cemetery, with the common understanding of what a cemetery is, goes to show and proves conclusively that it was an exception for the exclusive and absolute benefit of the lessor, and to the entire and complete exclusion of the lessee.

It is claimed that the plaintiffs, S. H. and J. W. Montgomery, expressly authorized the defendants to go upon the property in controversy and make the mine opening and erect the tipple, and for that reason ' the plaintiffs are estopped from recovering the property. These plaintiffs, who, it is claimed, gave this authority, are co-tenants with the many other plaintiffs, and therefore could not bind their co-tenants by giving to the defendant this authority to take possession of the property and make these improvements thereon, even if such permission would bind the plaintiffs giving it. "As a general rule, no estoppel created against either of the co-tenants can prejudice the rights of the others," Freeman on Co-Tenancy and Partition, section 168. There is a conflict in the evidence as to whether or not the plaintiffs did give such authority to the defendant, but if so it was only a parol license, without consideration, revocable at the pleasure of the licensor. "A parol license from one lot owner in a town to another to pass a tile drain under the former's lot for the purpose of draining the lot of the latter is revocable at the pleasure of such licensor. To entitle a party wishing to drain his lot under the surface of his neighbor's lot by a right not subject to revocation at the will of such neighbor, the privilege of so doing must be acquired by deed." *Pifer* v. *Brown*, 43 W. Va. 412.

None of the principles of estoppel apply. Both the lessors and the lessee knew of the exception. No fraud was practiced by the lessors, and no conduct is charged against them by which the lessee was misled. When it made the improvements upon the property, it did so with full knowl-

edge of all the facts, knowing that it had only a parol license, if it did in fact have such authority.

The plaintiff in error complains that the court gave erroneous instructions for the plaintiff, and erred in refusing certain instructions offered for the defendant. The instructions given for the plaintiff conform to the principles herein announced, and properly present the law applicable to the case, and we think were properly given; and those offered by the defendant presented the opposite view, and were properly rejected.

The next question presented for our consideration is whether or not in an action of unlawful entry and detainer damages can be recovered for the detention of the property, but as the amount of damages recovered in this case was only one hundred dollars, and not sufficient to give this Court jurisdiction, we cannot pass upon this question. It is true that in actions of this kind a writ of error will lie to this Court, but we have found that there is no error here unless it is in giving a recovery for damages, and this being the only error, if it is error, a writ of error will not lie, because the amount is not within the jurisdictional limit.

The recovery of the possession of the land is the principal object of this litigation, and the recovery of damages for its detention is necessarily incidental thereto, and in such cases we cannot correct an error in giving damages unless the amount of the recovery, exclusive of costs, exceeds the sum of one hundred dollars. A writ of error would not have been awarded to review the judgment in giving damages unless it had been thought that there was other error, and if this is so, why now review it when we find that there is no other error. The Constitution and our statute make the judgments of circuit courts final as to purely pecuniary matters where the amount in controversy, exclusive of costs, does not exceed one hundred dollars. And as to this error complained of, it is purely pecuniary, and the amount does not exceed that sum.

In actions of this character, brought in the circuit court, chapter 89 of the Code, we find no provision is made for the recovery of damages for the detention of property, and while we do not decide this question, we will call attention

to the difference between this chapter and section 211 of chapter 50, Code 1899, section 2162 Ann. Code 1906, providing for actions before justices of the peace, which does provide for the recovery of damages for the detention of property.

The judgment of the circuit court is affirmed.

*Affirmed.*