# CHARLESTON.

G. C. HEDRICK *et al. v.* ALLEN PACK

(Nos. 6124, 6125, 6125-A, 6125-B)

Submitted May 1, 1928.   Decided May 8, 1928.

1.  LANDLORD AND TENANT—*Distress Warrant Returnable to Next Regular Term of Circuit Court Held Not Defective for Not Being Returnable to First Day Thereof (Acts 1925, c. 80).*

    A distress warrant issued by a Justice of the Peace and made returnable to the next regular term of the circuit court under Chapter 80, Acts 1925, is not defective because it is not made returnable to the first day of that term.   (p. 543.)

    (Landlord and Tenant, 36 C. J. § 1672.)

2.  SAME—*Distress Warrant Returnable to Circuit Court and Affidavit on Which it Was Based Should be Considered as Pleadings on Which Right to Recover Rent Was Based; Claimants Seeking by Distress Warrant to Recover Rents as Heirs Must Allege Facts Showing Relationship to Deceased; Where Claimants Seek by Distress Warrant to Re-*

cover Rent as Heirs, Mere Allegation That They Are Heirs
of Person Entitled to Rents is Demurrable (Acts 1925,
c. 80).

Under said Chapter 80, Acts 1925, the distress warrant
made returnable to the circuit court and affidavit of the land-.
lord, or his agent, on which it is based, should be considered
as if they were the pleading on which plaintiff's right to re-
cover is based; and where the claimants in such affidavit and
writ seek to recover from, defendant for rent in arrears as
heirs of the person under whose contract the rents are re-
coverable, they must allege facts showing their relationship
to the deceased. A mere allegation that they are heirs is not
good pleading, and is demurrable.   (p. 544.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not
    part of syllabi.)

Error to Circuit Court, Raleigh County.

Four actions by G. C. Hedrick and others against Allen
Pack.  Judgments for plaintiffs, and defendant brings error.
Cases considered together.

*Judgments reversed; verdicts set aside; new trials awarded.*

*Williams & Riffe* and *C. O. Dunn,* for plaintiff in error.
*Ashworth & Ashworth,* for defendants in error.

LIVELY, JUDGE:

These four actions resulted in verdicts and judgments in
favor of plaintiffs suing as landlords of defendant upon four
distress warrants, the first one, for rent reserved by contract,
for the months of December 1926, and January and February
of 1927, including $100.00 due as a balance for the month of
November 1926; and the subsequent ones, for rents claimed
for the months of March, April, and May 1927, respectively.
The same jury rendered verdicts in each case and from the
judgments pronounced thereon, these writs of error were
allowed.

The actions are based on a written lease between G. C.
Hedrick and Ethel M. Hedrick, his wife, and Alex McNabb of
the one part, and defendant Allen Pack, of the other part,
wherein the lessors leased a storeroom and basement in a three-
story building in the city of Beckley for a term of years, at

$400.00 per month payable in advance on the first day of each month following the date of the lease, which is dated the 28th day of January, 1925. The lessors reserved the right to change the front and windows of the building without being responsible for loss or damage to the lessee by reason of the change or alteration or for obstructing the entrance to the storeroom, but it is stipulated that the work be done as speedily as possible so as to cause no unnecessary delay or blocking of traffic. The lessee agreed to keep the room in a good state of repair at his expense, ordinary wear and tear excepted. There are other provisions, usual to be found in such instruments, which are unnecessary to detail. Later the original lessors did remodel the front and doors of the building as they had the right to do, and it is claimed by the lessee in these suits by way of recoupment against the rent that the improvement was not done as speedily as possible, and that he was therefore unnecessarily damaged by reason of the breach of this stipulation.

After this improvement was made, and on October 17, 1926, Alex McNabb died. On February 14, 1927, plaintiff G. C. Hedrick, acting for himself and his wife and as the agent of Marguerite Gulley, Sarah Caple, George, Sam, Will, Alex, Frank and John Love, Katherine Moore, and Florence Mc-Nabb, made affidavit before a justice of the peace of Raleigh county as a basis of a distress warrant against defendant Pack for the sum of $1,300.00 with interest, all claimed to be due under the lease contract, and stating therein that the persons named in the affidavit as claimants of the rent reserved, excepting himself and wife, "are the heirs of Alex McNabb, deceased, the agent of all of whom he, the said G. C. Hedrick, is in making this affidavit." Thereupon a distress warrant was issued in favor of the parties named in the affidavit to distrain the goods and chattels of defendant found upon the leased premises which were described, and requiring the officer to make return to the circuit court of Raleigh county on the 25th day of February, 1927, and the sheriff, to whom the warrant was directed, was also commanded to summon the lessee to appear in court on that day to answer the complaint of the parties named in a civil action, as provided by section 10, Chapter 93, Code, as amended by Chapter 80, Acts 1925, "in

which action the plaintiffs are obtaining a judgment for the sum of $1,300.00 exclusive of interests and costs''. This paper was executed on Pack, and the goods on the leased premises distrained according to its tenor, and returned to the circuit court whose clerk placed it on the docket, and it was tried at the succeeding term of court and judgment rendered on the 16th day of June, 1927. In the months of March, April and May, 1927, like affidavits were made by Hedrick and like distress warrants and notices issued, duly served and returned. The only material difference in the first warrant and notice from the subsequent ones, is that the first warrant does not state on its face that the persons named as claiming (other than G. C. and Ethel Hedrick) are the heirs of Alex McNabb. The three subsequent warrants and notices follow the affidavit and state that the persons above designated are the ''heirs of Alex McNabb, deceased''.

In each of the cases defendant craved oyer of the affidavits on which the distress warrants and notices of suit were based and demurred and moved to quash the affidavits and the warrants and notices. The court overruled the demurrers and motions to quash, and this is one of the points of error relied upon for reversal. Defendant pleaded the general issue and filed two special pleas, one of which sets up a claim that plaintiffs neglected and refused to make proper repairs in and about the storeroom and by such failure and refusal defendant was evicted from a portion of the premises, namely, two show windows; and the other is to the effect that the plaintiffs rendered the occupation of the storeroom untenable at the time they made the change of the show windows and front of the said storeroom and did not have the work done as speedily as possible.

Upon the trial of the first case, plaintiff to maintain the issue, examined G. C. Hedrick who produced the lease contract in evidence and stated that the amount claimed, $1,300.00 together with the interest, was due and payable to plaintiffs from the defendant. He gave the date of the death of Alex McNabb, one of his co-lessors, as October 17, 1926, and was asked if Marguerite Gulley, Sarah Caple, the Love boys, Katherine Moore and Florence McNabb were the heirs of Alex McNabb, deceased, and replied that they were, and was asked

if there were any other heirs, and replied that, to his knowledge, there were none. Defendant relied upon a motion to strike out the evidence of Hedrick and did not introduce any testimony. The motion to strike was overruled, and the jury returned a verdict in accordance with the sums claimed and proven by Hedrick. Before going into the trial of this, and the subsequent cases, a motion for continuance was made by defendant because of the absence of a witness residing in Bluefield, West Virginia, who had been summoned and whose evidence he claimed to be material, and that the same facts could not be shown by any other witness. The court refused to continue the cases on this ground, and this is one of the errors relied on. Following the result of the first case, the other three cases were tried by the same jury and like steps taken, except that defendant introduced many witnesses to sustain his claim of recoupment, and that he did not owe the rent because the building had been partially destroyed by fire which occurred on February 25, 1926. In these cases error is predicated on the introduction and refusal of evidence, but this error cannot be considered because the particular evidence relied upon is not made a ground for setting aside the verdict nor saved by special bills of exception. *Tuggle* v. *Belcher*, 104 W. Va. 178. The other errors relate to the giving and refusal of instructions.

Logically the first error to be considered is the demurrer to and motion to quash the affidavits and distress warrants, for these papers constitute plaintiffs' pleadings by which they assert their right to recover for a specific amount against specific property and the relation which brings about the obligation. With reference to the warrant in the first case, it is said that because it is made returnable to the circuit court on the 25th day of February, which day was not the first day of the term, makes the warrant fatally defective because, it is claimed, that under section 2, Chapter 124, of the Code, that process of this character shall be returnable to the court on the first day of the term, except process awarded in the court. We do not think this section of Chapter 124 applies, for the Act under which the distress warrant is issued, as amended by Chapter 80, Acts 1925, requires that the warrant shall be made returnable by the Justice to the next regular term of the cir-

cuit court of the county; and when so returned and filed with such circuit clerk, he is required to mark the same filed, and docket the trial of all issues arising thereon for hearing and trial at the following regular term. There is no reason for requiring the warrant to be returned on the first day of the next regular term of the circuit court after it is issued by the justice of the peace. It is only docketed for trial when returned, and the trial is had at the following regular term. It is said that reason is the soul of law, and we conceive no reason for the return of process of this character to the first day of the term of the circuit court following. No disadvantage accrued to the defendant. *Montgomery* v. *Economy Fuel Company,* 61 W. Va. 620. That point of error as to the warrant in the first case is untenable.

The other point of error on demurrer and motion to quash, which applies to all of the affidavits and warrants, is that they do not show how the plaintiffs, other than the two Hedricks, are heirs of Alex McNabb, deceased. It is argued that the mere statement that they are heirs of Alex McNabb is not sufficient to show the true relationship and their consequent right to recovery of the rent. The remedy of distress for rent is very ancient in origin and is a product of the feudal system. Rent was originally reserved as a part of the military service which was of vital importance to the general safety and public welfare under the feudal system and was considered somewhat as taxes levied for the support of that system; and this drastic measure was instituted for the purpose of getting a quick return of money for military efficiency. Although the reason for this summary and drastic procedure has for many centuries disappeared, it is still retained in favor of the landlord, and the Virginia courts have naively justified the ancient procedure on the theory that it affords the landlords with a safe and speedy remedy for their rents and enables the poorest of the people to obtain homes; but whatever may be the reason and policy the Legislature has not seen fit to abolish this drastic procedure, and it is a very active part of our present law. Prior to 1925 if the tenant desired to contest the right of his landlord to recover rents, he gave a forthcoming bond and forfeited that bond, and interposed his de-

fenses upon a suit on that bond. That procedure is radically changed by Chapter 80, Acts 1925, which provides that a distress warrant if issued by a justice of the peace for more than $300.00 shall be returned to the circuit court as above set out and trial is had of the right to recover and the amount without the formality of the giving of a forthcoming bond. The statute provides that the defendant may make such defense, legal or equitable, to said distress warrant as he could have made if an action at law had been brought on said demand for rent. The procedure now is quite similar to an ordinary suit for the recovery of a debt. By the issuance and levying of the distress warrant, the landlord is enabled to seize the property and hold it for his lien pending the result of suit. His lien attaches at the time the property seized has been placed on the leased premises, and the warrant enables him to take physical possession through the officer to preserve that property in the payment of his lien. The property seized is *in custodia legis* awaiting proper disposition under the order of the court.

The procedure is in the nature of an action for the recovery of a debt in which the defendant may make legal and equitable defense and the property is held pending disposition by the court. The affidavit for the distress warrant and the warrant itself form the basis of the landlord's action. They should be considered as the declaration of the plaintiff in the case and governed by the laws of pleading applicable to declarations in debt and assumpsit. It will be noted that the affidavit is made a part of the record by oyer, and the question arises if it is sufficient for those plaintiffs who claimed to have stepped into the shoes of Alex McNabb "as heirs" to have alleged their right to recovery by simply saying they were "heirs of Alex McNabb". Would such allegation be sufficient in a declaration? It is quite generally held that, in the jurisdictions where a proceeding to distrain is regarded as an action at law, it has all the characteristics of any other civil action and is governed by the same general rules of pleading and practice. Vol. 18, Standard Ency. of Proced., page 526, par. 6, title, "Landlord and Tenant." And it is said in Vol. 7, Ency. Pl. & Pr., page 23, that: "The warrant of distress when it stands under the statute for a declaration, must aver all matters which the plaintiff seeks to prove, and the amount to be

recovered is limited to the amount fixed in the warrant." , At common law, if a person claiming to be an heir sought to recover by virtue of that relationship, it was necessary for him to show *how heir*. As far back as the first year of the reign of William and Mary, we find in *Denham* v. *Stephenson*, 1 Salkeld 355, it was held: "Where H. sues as heir, he must shew his pedigree & *coment haeres*, for it lies in his proper knowledge; but where one is sued as heir, he need not; for the plaintiff is a stranger and it would be hard to compel him to set forth another's pedigree." In this state we follow the procedure at common law unless it is inconsistent with our statutes or policy. The Virginia court in 2 Munf. 88, *Waller's Executors* v. *Ellis, et al.,* approved the ruling in *Denham* v. *Stephenson, supra.* Chitty in his great work on pleadings in Vol. 1, 16th Am. ed., page 382 (484), concisely states the rule of pleading in actions of this character as follows: "But when the declaration is by or against a person who was not a party to the original contract, and particularly in actions upon leases, the statement of the *derivitive title* of the plaintiff or the defendant precedes the breach. And in an action on a lease by a party claiming from the lessor there must be an inducement of the lessor's title as before explained. Thus, when an action is brought *by* the *heir* of the lessor, the title and death of his ancestor, and the descent to the plaintiff as heir, is shown; and it must appear how he is heir, viz., whether as son or otherwise, and if he claims by mediate, not immediate, descent, he must show the pedigree; for example, if he claims as nephew, he must show *how* nephew. And when the plaintiff claims as assignee of the reversion by lease and release or other conveyance, the nature and operative part of the conveyance must be set forth." Many cases could be cited from the decisions of various states which follow the rule of pleading set out by Chitty, but we content ourselves with citing only one case, that of *Langston* v. *Edwards,* (Ky.) 54 S. W. 833, which says that to entitle one to recover as heir, it is not sufficient to allege merely that he is an heir, but he must state the facts showing his relationship to the decedent. This appears to be the general rule in the jurisdictions where the proceeding to distrain is regarded as an action at law.

It is apparent that these plaintiffs claiming as heirs of Alex McNabb, deceased, would be required to show in their evidence the relationship which existed between them and the deceased in order that the court might determine as a matter of law that they were heirs and therefore entitled to recover the rents. It follows necessarily that if they were required to show these facts, it was necessary for them to allege it in their pleading. For these reasons we think the demurrer and motion to quash should have been sustained. It is quite generally held that the remedy by distress being stringent and summary in its character, all of the statutory requirements should be strictly followed. 7 Ency. Pl. & Pr. 26. And the pleadings on which it is based should be clear, unequivocal, and show jurisdictional facts. Because of the defectiveness of the affidavits and warrants as above set out, which we hold is the basic pleading of the plaintiff under the statute, the judgments in each of the cases will be reversed, the verdicts set aside, and new trials awarded.

Under this disposition of the case, it will be unnecessary and improper to pass upon the alleged error of the court in refusing to continue the cases because of the absence of a witness claimed to be material. And perhaps it would be unnecessary or improper to pass upon other alleged errors committed in the trial of the case upon its merits. As before suggested, the errors based on the giving and refusing of testimony cannot be considered. And we have cursorily examined the alleged errors in the giving and refusing instructions and have perceived none which would call for reversal. However, that assignment of error has not been carefully gone into, as the cases must be reversed for the reasons above assigned.

*Judgments reversed; verdicts set aside; new trials awarded.*