# CHARLESTON.

STATE ROAD COMMISSION *v.* ELLA COOGLE, *Admx., et als.*

(No. 6260)

Submitted November 19, 1929. Decided December 3, 1929.

288

*Howard B. Lee,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *Marshall W. Ogden,* Assistant Prosecuting Attorney, for appellant.

*George M. Ralphsnyder, Charles W. Brandon,* and *Victor H. Shaw,* for appellees.

MAXWELL, JUDGE:

This case comes on motion to reverse a decree of the circuit court of Marion county rendered on the 6th day of February, 1928, against appellant, the State Road Commission. The suit is for specific performance of an alleged parol contract.

In the early fall of 1917 the county court of Marion county entered upon and appropriated a portion of the land of B. C. Coogle at Rivesville in said county and re-located and constructed thereon for a distance of about two hundred and forty-seven feet a hard surface highway, the same being on the route from Fairmont to Morgantown. There was no condemnation.

On the 4th of April, 1921, Coogle instituted an action of assumpsit against the county court for $5,000.00 for the land so taken and damages to the residue. The declaration was filed at May Rules, 1921, and the suit was regularly matured for trial.

The following allegation appears in his declaration: "Plaintiff further avers that * * * the said defendant * * * entered upon said land of the plaintiff * * * took possession of a large part of plaintiff's said land, to-wit, a strip of land about fifty feet wide and about three hundred feet long, immediately in front of plaintiff's said store room and dwelling house, and extending the full length of plaintiff's said lot where the same abuts on said Morgantown and Fairmont Turnpike road, and did thereby appropriate to the use of said defendant and to the use of the public said strip of land * * *."

On the 24th of August, 1921, the State Road Commission entered an order taking over this road as part of the road system of the State.

On the 17th of June, 1922, the parties in interest entered into an agreement to arbitrate the claim asserted in plaintiff's declaration. Accordingly, on the 27th of June, 1922, orders were entered by the county court and by the circuit court whereby it was stipulated that the said matters should be referred to and decided by Charles E. Manley, A. G. Martin and John S. Phillips, arbitrators, who were selected and appointed for the purpose. In the said order of the circuit court it was provided: "Said arbitrators shall ascertain what is a fair and just compensation to be paid by the defendant to the plaintiff and for the land taken by the defendant, described in said declaration, together with damages, if any, to the residue of the lands including improvements thereon of the plaintiff, by reason of the taking of said land by the defendant * * * and shall then thereto add interest thereon at the rate of six per cent. per annum from the time of the taking and damaging of the same to the date of their report and award, * * *."

These arbitrators, after being qualified, went upon the land and on the 25th of July following made their report in writing in which they found that a fair and just compensation to plaintiff for the land taken and damaged was $2,066.66, which, with interest from the time of the taking of the land, amounted to $2,670.23. The circuit court confirmed this report and gave judgment thereon. The county court paid said sum to B. C. Coogle.

B. C. Coogle died in 1922 or 1923 and in due time a suit was brought by Ella C. Coogle, his administratrix, to settle his estate. A survey of the land was made under the direction and supervision of George M. Ralphsnyder, special commissioner, appointed by the court as such to make sale of the land. Included in the property advertised for sale was the land adjacent to the hard surface of the road before mentioned, and involved serious encroachment upon the forty foot right of way claimed by the county court and its successor, the State Road Commission, by reason of the award of the arbitrators before mentioned. The county court, therefore, filed its petition in said chancery cause and asserted its said claim, but the court denied relief upon the petition. Whereupon, the State Road Commission instituted this suit at April Rules, 1926. The purpose of the suit is to obtain a deed not only for the land actually covered by the hard surface of the road but for the additional width as well, and for general relief.

It is alleged in the bill that by the proceedings aforesaid the county court acquired of B. C. Coogle "a strip of land forty feet wide and approximately two hundred forty-seven feet long, or twenty feet on either side of the * * * center line of right of way, * * *." This is denied in the answer and it is there asserted "that it is plain the said compensation allowed by said arbitrators covered the land taken by said concrete roadbed and the damages resulting to the lands of said B. C. Coogle from the construction of said roadbed in September, 1917, and did not include compensation for any additional land or any additional damage to said land caused by the taking of additional land." There is a sharp conflict in the evidence on this proposition. It is not necessary to review this evidence in detail, because the parties must be held to have conducted their negotiations and settlement in the light of and in accordance with the requirements of the law of the State. This is now a state road as appears from the record. The record does not disclose that at the time the hard surface was laid in 1917, the road had been formally designated a "Class A" road, but it is shown in both pleading and proof to have been then, as now, the Fairmont and

Morgantown Turnpike. It is referred to in the evidence as the main road between Fairmont and Morgantown. The court takes judicial notice of the fact that the two cities named are the county seats of Marion and Monongalia counties, respectively. By section 20, of Chapter 66, Acts of 1917, main county roads are designated "Class A" roads. The act further declares the legislative purpose that such roads "shall be so located as to lead to the county seat of an adjoining or adjacent county, or to an important commercial center thereof, or of an adjoining state, * * *." The said road must, therefore, be considered and dealt with as a "Class A" road as of the time the change was made along the Coogle property in 1917. The statute then as now fixed the width of such highway at forty feet. Acts of the Legislature of 1917, Chapter 66, section 20; Acts of the Legislature of 1921, Chapter 112, section 19 (Code, Chapter 43, section 19). The said act of 1917 became effective the 23rd day of May of that year. The Coogle property was not invaded by the county court until the following September. In exercising its authority to acquire land for the purpose of reconstructing the old turnpike as a "Class A" road the county court had no discretion as to the width of the right of way, except as physical surroundings might necessitate. The matter of width was fixed by law. This principle must control, though it appears that at the outset the county court proposed to acquire only a ten foot strip of the Coogle property to widen and straighten the road. The principle of law here employed is essentially the same as was recognized and followed in the case of *County Court* v. *Coal Company,* 103 W. Va. 386, wherein it was held that in the light of the statute fixing the width of county-district roads at thirty feet a dedication, "in the absence of proof to the contrary, will be presumed to have been of a right of way thirty feet wide." In the instant case there is some testimony, as already stated, tending to support the above quoted allegation of the answer of the defendant, but it does not overcome the presumption of law that a right-of-way of statutory width was intended and the affirmative testimony of the three arbitrators that their finding of damages in favor of Mr. Coogle was determined as

to its amount on the belief and theory that a forty-foot right-of-way was being acquired by the county, and that Mr. Coogle was being paid for twenty feet on his side of the center line of the road as relocated. They say that about $900.00 of their award was to cover the cost to Coogle of moving his building which extended several feet upon the twenty-foot strip, but which did not encroach upon the ten-foot strip.

The criticism is advanced that to give weight to the testimony of the arbitrators is the permit an impeachment thereby of their written report. The pertinent portion of the report reads: "And we find, and so report to said court, that the land taken and damaged as described in said proceedings was taken and damaged by the defendant in September, 1917, and that a just and fair compensation for the land taken and damages to the residue which the plaintiff is entitled to from the defendant is the sum of $2066.66 * * *." In the light of the averment in Coogle's declaration that the portion of his land taken was "about 50 feet wide and about 300 feet long", there was nothing to circumscribe the arbitrators to a consideration of less than the statutory width, though only a part had then been occupied by the hard surface. If it be said that the phrase, "the land taken and damaged as described in said proceedings," appearing in said report, might be considered as applying only to the ten-foot strip, that conjecture is met by the testimony of the arbitrators that they were considering the larger interest.

Now, as to the remedy. Courts of equity will, by mandatory decree, require the execution of deeds conveying property in proper cases. Ordinarily, such decrees are predicated upon written contracts, sometimes on parol contracts; but never are such decrees awarded where there is no contract. This case falls within the latter class. There was no contract between the county court and B. C. Coogle for the right-of-way for the new road. Representatives and employees of the county court entered the Coogle property and constructed the road without contract with the owner. Subsequent proceedings and settlement followed as above narrated. This does not afford grounds upon which the trial court, or this Court could properly enter a decree requiring the execution

of a deed for the land taken, but it is clear that the State Road Commission as successor of the county court in the control, maintenance and operation of the said highway is entitled to have its rights protected. This may be done under the prayer for general relief. There will, therefore, be a decree here fixing and determining the right-of-way of said highway along the Coogle property as extending twenty feet on each side of the center line of said highway.

*Reversed and rendered.*