BECKLEY NATIONAL EXCHANGE BANK *v.* J. D. LILLY *et al.*

(No. 8233)

*and*

CARL C. SANDERS, *Trustee v.* J. D. LILLY *et al.*

(No. 8234)

Submitted October 23, 1935. Decided November 26, 1935.

*Frank Lively, J. W. Maxwell, Carl C. Sanders, W. A. Thornhill, Jr.,* and *Stanley C. Morris,* for appellants.

*File, File & Scherer,* for appellees.

KENNA, JUDGE:

This suit was instituted in the circuit court of Raleigh County by Beckley National Exchange Bank against J. D. Lilly and others for the purpose of enjoining the defendants from building upon and closing a strip of land sixteen and one-half feet wide and about fifty feet long, the width of which abuts the southern extremity of the southeastern line of plaintiff's property upon the corner of Main and Heber Streets in the City of Beckley, over which the plaintiff claims an easement for ingress and egress as an alleyway to the

southeastern side of its building. Prior to the bringing of the suit, the defendants were notified by the plaintiff that it did not intend to permit the construction of a building upon the alleged alleyway. The suit was then brought, but no temporary injunction was applied for. *Pendente lite* defendants began and completed the construction of their building which entirely covers the alleged alleyway. By its amended and supplemental bill, plaintiff sought a mandatory injunction requiring the defendants to remove that part of their building which is upon the alleged alleyway, and to open it in a manner that would restore the plaintiff's alleged easement and right of use. After full pleadings and proof, which comprise a printed record of 582 pages upon this appeal, the circuit court of Wyoming County, to which the cause had been transferred owing to the disqualification of the judge of the Circuit Court of Raleigh County, upon final hearing, entered its decree finding in favor of the defendants, and dismissing plaintiff's bill of complaint.

The exhaustive detail with which this case is involved, both upon the record and in the briefs, can not be fully, and perhaps not adequately, dealt with in the scope of a written opinion. Always remembering that it is not the function of this Court upon conflicting proof to decide causes as it believes they should have been decided in the trial court, but that it is our office to decide whether there is some clear reason, either of law or of fact, for deeming the trial court's decree wrong and reversing it, we hope to sufficiently state the matters upon which, in our opinion, the decision of this case necessarily turns.

The propositions relied upon for reversal of the trial chancellor's decree are stated as follows in the brief for the appellant:

First: The deeds from Combs to Blankenship vested in Blankenship a right-of-way in the sixteen and one-half foot alley, which right-of-way has passed to and is now vested in the plaintiff.

Second: Even if no right-of-way in the sixteen and one-half foot strip vested in Blankenship by virtue of the deeds under which he took his lot, he and the plaintiff acquired such right-of-way by prescription.

Third: The deeds under which the Lillys hold bind them to recognize and observe the rights of the plaintiff in and to the sixteen and one-half foot alley.

The plaintiff below, also plaintiff in error, holds under P. L. Blankenship, and the defendants below hold one-half of their lot under direct conveyance from C. E. Combs and the other half under Combs by mesne conveyances. For this reason, the properties will be spoken of mainly as the Blankenship and Combs lots.

Sometime prior to 1907, the half block of land in the City of Beckley, bounded by Fayette Street on the east, Neville or Main Street on the north, Heber Street on the west, and an alley on the south, was comprised of lots, the owners of which concluded that they would create alleys within the half block to serve their respective properties. For convenience, this half block and the properties lying within it will be referred to as though Fayette Street and Heber Street ran due north and south and Main Street and the alley ran due east and west, although, according to the meridians upon the plat filed in the case, this is not exactly accurate.

The owners of the different lots within this half block, by written agreement, established a sixteen-foot alley, the south corner of which on Fayette Street is approximately 75 feet north of Main Street, and which runs westward parallel with the property line on Main Street a distance of approximately 170 feet. Later, there was established a fourteen-foot alley running south from approximately the west end of the first alley to the alley lying at the south of the half block mentioned between Fayette and Heber Streets. These two alleys have both been improved by paving and neither is in controversy in this case. The strip of land in controversy is sixteen and one-half feet wide and lies between the east line of the plaintiff's lot (referred to in the testimony sometimes as the Blankenship lot) at its southern extremity and the point where the two first described alleys join. For the purpose of this case, this strip of land may be referred to as running east and west, and as being something like fifty-five feet in length.

In 1907, Combs had acquired all of a lot of land lying within the half block fronting approximately eighty feet on

Main Street, running back with Heber Street between parallel lines a distance of about 100 feet and including entirely the strip of land in controversy. On April 27, 1912, T. E. Combs and wife conveyed to P. L. Blankenship from this larger lot, a lot fronting twenty-seven feet on Main Street and running with Heber Street, and between parallel lines, a distance of seventy-five feet. This deed established a party wall agreement between T. E. Combs and P. L. Blankenship upon both of the lines of the lot conveyed which abutted upon the remaining Combs property, the remaining portion of which bounded the lot sold on the east and south side.

It is to be observed that this first lot conveyed to Blankenship does not extend from Main Street and in a southerly direction far enough to reach the strip of land in controversy.

On July 11, 1912, T. E. Combs and wife conveyed to P. L. Blankenship a lot fronting 26 feet on Heber Street and lying to the south of the lot formerly conveyed to Blankenship. This second lot conveyed to Blankenship lay between the east and west lines of the lot formerly conveyed to him extended a distance of twenty-six feet, with the exception that nine inches additional land lying directly across the western end of the land in controversy was conveyed to Blankenship at the southern extremity of his eastern line for a distance of sixteen and one-half feet. In this deed, a party wall agreement that was established in the former deed along the southern line of the lot first conveyed to Blankenship is released, and a party wall agreement that was established in the former deed on the eastern line of the Blankenship lot at that time conveyed, is extended a distance of ten feet. At this point, the nine-inch conveyance to Blankenship begins and the deed stipulates that, for the sixteen and one-half feet that this nine-inch conveyance covers, Combs shall have the right at any time in the future to join to any wall that may be built upon the eighteen inches comprised by this nine inches and the nine inches immediately west of and parallel to it by paying one-half of the cost of construction.

The first contention of the plaintiff is that since the entirety of the Combs lot, out of which both of the lots conveyed to Blankenship were carved, was a part of the dominant estate

for the use of which the easements in the original alleys (referred to as having been improved) were created, the entire Combs lot was the dominant estate as to the easements in those alleys, and that therefore the lots conveyed to Blankenship had the same right to the enjoyment of these alleys as did the part of the Combs lot remaining in Combs after those conveyances. It is argued by the plaintiff that inasmuch as the Blankenship property could not enjoy the easement in the first two alleys created, without passing over the sixteen and one-half foot strip at the back end of the Combs lot remaining in Combs after the conveyances to Blankenship, and inasmuch as it must be supposed that the Blankenship property was intended to enjoy the easement appurtenant to it, the right-of-way over the sixteen and one-half foot strip necessarily follows by operation of law as the effect of the conveyances to Blankenship.

It may be admitted that when Combs conveyed a part of the dominant estate to Blankenship the deed operated to vest in Blankenship the right of user or easement in the two improved alleys. It by no means follows, however, that the deeds operated to vest also in Blankenship a right to pass over what remained of the Combs lot (dominant estate) in order to reach and enjoy that easement. As we read the cases, the right to pass over the remaining portion of the land from which a part may be conveyed rests upon the sheer necessity of ingress and egress. It is then a right-of-way of necessity. Here, no such necessity has been shown, and, in fact, is negatived, and the cases are to the effect that the mere *right* to use an easement from which the land conveyed is separated by the dominant estate does not give rise to such necessity. Full discussions of this question are so readily available in the decided cases that it is not thought necessary to deal further with it here, but citations are given from which the law on the subject can be exhausted without difficulty. *Henrie* v. *Johnson*, 28 W. Va. 190; *Phoenix National Bank* v. *United States Security Trust Company*, 100 Conn. 622, 124 Atl. 540, 34 A. L. R. 963, and note; *Doten* v. *Bartlett*, 107 Me. 351, 78 Atl. 456, 32 L. R. A. (N. S.) 1075, and note; *Nichols* v. *Luce*, 24 Pick. (Mass.) 102, 35 Am. Dec. 302; *Dawson* v. *St. Paul Fire Ins. Co.*, 15 Minn. 136, 2 Am. Rep. 109.

This brings us to consider the question of whether such an easement has arisen from prescriptive use of the land in controversy by Blankenship and his successors in title.

Sometime after the conveyance to Blankenship in 1912 and probably in the year 1913, a building was constructed by him which entirely covered the two lots conveyed to him by Combs, and at the same time a building was constructed by Combs upon the remaining part of his property that covered all of it excepting the sixteen and one-half feet lying at the back of the lot and being the strip of land in controversy. Shortly thereafter, a building was constructed by the Raleigh Hardware Company upon the lot of land that it then owned, now belonging to the Yaple Realty Company, which lay along the southern line of the Combs property and the southern line of the Blankenship property and faced on Heber Street. After the three buildings were constructed, the strip of land in controversy was bounded by buildings on three sides, the Combs building on the north, the Blankenship building on the west and the Raleigh Hardware Company building on the south. The east end of the strip of land in controversy connected with both of the improved alleys, and, as far as its physical aspect is concerned, it formed a convenient way of access from the two improved alleys to the back of the Blankenship building, as well as to the Combs building, and to the building of the Raleigh Hardware Company. There was no door from the Blankenship building opening upon the land in controversy, but a window did open upon it in the basement at a level about one and a half to two feet above the ground. A window upon the second floor also opened upon the land in controversy, and later, when a third floor was added, the same was true of it. Doors from the basement of the Combs building opened upon the land in controversy at its level, and windows also opened upon it from the second story. Windows opened upon the land in controversy from the Raleigh Hardware Company building as well. The testimony shows that the strip of land in controversy was used at the time the Raleigh Hardware Company building was erected for the purpose of hauling in and storing materials used in the construction of that building, and that the same

was done in the repairs and construction of the Blankenship building, and in the repair of the Raleigh Hardware Company building. It is shown that shortly after the construction of the Blankenship building, the basement floor thereof was leased by Blankenship to the Lewis Brothers and Lacy Trump to be used as a pool room and soft drink establishment. At about the same time, they also leased the basement of the Combs building that adjoined the Blankenship building. The tenants cut a door between the Combs building and the Blankenship building, and there was a door leading onto the strip of land in controversy and into that part of the Combs basement that they had leased. They remained in possession, according to the testimony, some ten or fifteen years and different witnesses testify that trucks from time to time passed over the land in controversy in going to the pool room in the basement of the Blankenship building and there delivering soft drinks of various kinds, and that on at least one occasion pool tables were taken in through the window in the basement of the Blankenship building. There is testimony to the effect that people at times passed over the strip of land in controversy and went through the window into the basement of the Blankenship building in going to and from the pool room. The proprietors of the pool room at one time established an acetylene gas plant in the alley, and a barber who had an establishment on the ground floor of the Blankenship building was permitted to put his hot water heater in the basement. The testimony is that he received his coal into a piano box in the alley and took it in through the window. The coal for the Blankenship building was at least in part taken over the strip of land in controversy and through the window in the basement. Shortly after the construction of the Combs and Blankenship buildings, a joint heating agreement was entered into between the owners, the furnace to be located in the Combs building and to heat both buildings, the owners of the Blankenship building to have the right of inspection and to ingress and egress to the Combs building.

A number of witnesses, including D. C. Meadows, chief of police of the City of Beckley from 1913 to 1918, Tom Lewis, former tenant of the basement of the Blankenship building,

French Lucas, cashier of the Beckley National Exchange Bank for eight years, and J. S. Ellis, testified to the use of the strip of land in controversy from time to time and for various purposes.

In addition to the foregoing evidence, plaintiff points to recitals in certain deeds in which it is claimed the existence of an alley upon the strip of land in controversy is recognized by predecessors in title of defendants. This is said to be true of a deed made by Combs and wife to Joe L. Smith and C. H. Meador, dated June 21, 1919. This is the deed to which the Gunnoe plat was attached. It contains no language referring to the strip of land in controversy as an alley, nor does it contain any reference to the plat.

In 1919, Combs employed B. S. Gunnoe, an engineer, to lay down the lines of his properties in the vicinity of the land in controversy. This was done in connection with a conveyance that Dr. Combs at the time was about to make of another piece of property. The testimony shows that Dr. Combs went on the ground with Gunnoe and showed him the property lines, including the boundaries of the strip of land in controversy as shown by the buildings at that time standing on three sides of it. Gunnoe stated that in making the map and in discussing the matter with Dr. Combs upon the ground, Dr. Combs stated to him that his purpose was to locate the back end of his lot and to fix the location of some alleys that had been created pursuant to some sort of an agreement, which the witness Gunnoe stated he could not recollect. Gunnoe prepared a plat of his survey. This map shows a part only of the land in controversy, bounded on the north and south by broken lines, with a broken line extending across it where it joins the two main improved alleys. The map was not spread upon the record with the deed to which it was attached when the Combs executed it, and it appears to have had for its main purpose the location of a lot lying across the improved alleys and to the southeast of the land in controversy. From the lines of this plat it would appear that the showing thereupon of the part of the land in controversy was incidental only to the main purpose of the plat, although the witness Gunnoe specifically states that in the discussion with him upon the ground, Dr. Combs referred to the land in contro-

versy as an alley. C. A. Hawley, a brother-in-law of Dr. Combs, who assisted Gunnoe in making the survey upon which the map was based, substantiates the testimony of Gunnoe.

Plaintiff next points to a deed dated July 7, 1920, from T. E. Combs to Thelma Combs, his daughter, in which the Combs lot lying adjacent to the Blankenship lot on Main Street is described as a lot extending back a distance of one hundred feet to an alley and the lot now owned by Spalding and Foster; with this lot is granted all the rights over alleys back of it and all rights and interest in any of the walls in any of the buildings on lots adjoining this lot. The defendants counter the plaintiff's contention with respect to this description, and the reference to the alleys, by saying that inasmuch as the two improved alleys lie directly back of this lot, the reference contained in the deed is intended to mean them, and, furthermore, that since the right in the party wall across the land in controversy was granted in this deed, that grant is not consistent with the grant of a right-of-way over the land in controversy.

Plaintiff next points to a deed from Thelma Combs to Annie Combs, her mother, dated the 7th day of July, 1920, which has the same references as the deed last referred to. Plaintiff advances the same argument with reference to this language, and it is countered by the defendant in the same manner.

Plaintiff next points out that in the deed made by P. L. Blankenship to the plaintiff, the lot conveyed by Blankenship was referred to as "that certain lot or parcel of real estate, together with all its appurtenances thereunto belonging."

Plaintiff next says that in the very conveyance to the defendants of the first half of the Combs lot that they purchased, the deed contained the following language: "The said parties of the first part hereby expressly reserve from the *opearion* of this conveyance all rights of theirs and others in connection with, touching and attached to the alley lying to the rear of said building hereby conveyed and between said building. and said Raleigh Hardware building, and do further grant unto the said parties of the second part the right to use said alley for ingress and egress to and from said building hereby

conveyed.'' The plaintiff contends that the reference to an alley herein is in full recognition of the alley upon the strip of land in controversy. The defendants' contention, however, is that the language was intended, not to create an alley appurtenant to the Blankenship property, but to create an alley, if at all, for the use of the Combs lot alone, inasmuch as Dr. Combs was retaining a lot between which and the two improved alleys, the lot of land first conveyed to the Lillys lay.

The plaintiff next points out that in the deed from Combs to Meador and Cunningham for the other half of the Combs lot, dated October 28, 1922, a like exception and reference to alleys and alley-rights was contained; and that also in the deed by which Cunningham conveyed one-half interest to the Lillys in the last named lot, the conveyance was expressly made subject to the rights of others in the back alley.

To meet the proof that the plaintiff relies upon as establishing a right-of-way by prescription, the defendant shows that running down from the second story of the eastern half of the Combs building there was a stairway and that at its bottom, some four or five feet from the ground, there was a platform about four or five feet square on the land in controversy; that connected with the western half of the Combs building there was a still larger platform jutting out into the land in controversy some four or five feet extending along the back of the Combs building a distance of approximately eight feet, and that this platform had connected with it a series of steps going still further into the land in controversy, and toward the building of the Raleigh Hardware Company a distance of some four or five feet. Defendants produced witnesses who testified that the latter platform made it impossible for trucks to pass by the end of the steps and over the land in controversy. The defendants show that some few years before the Combs building was burned in 1931 an overhead runway from the Combs building to the Raleigh Hardware building was constructed as a sort of enclosed bridge between the two buildings, and, furthermore, that several months at least before the fire there was a runway connecting the two buildings upon the ground level which absolutely.

closed and obstructed the use of the land in controversy as an alley. They point to the joint heating agreement by which Blankenship was given the right to inspect the heating plant in the Combs building as showing that Blankenship and his tenants passed over the strip in controversy by the license and permission of Combs. They point to the fact that instead of a door, a window only connected the Blankenship building with the land in controversy, as indicating that the use of the alleged alleyway was sporadic and occasional, and not based upon any open claim that would give a prescriptive right-of-way. They argue further that the proof shows that the use of the alleged alleyway in connection with the occupancy of the Blankenship building was, as a matter of fact, not continuous but only occasional, and assert that the main use of the strip of land in controversy was in connection with the Combs building itself, and for those who occupied it, or a part of it. Defendants contend that this accounts for the use of the words "and others" in the Combs' conveyances. Defendants further point out that at the time that the Lewis Brothers and Lacy Trump were using the land in controversy in connection with the Blankenship building, they were also the tenants of a part of the Combs building, and that their use could be based as well upon the one tenancy as upon the other. The defendants show that in certain instances the use made of the land in controversy was by the direct and express permission of the owners of the contended servient estate. On cross-examination of witnesses for the plaintiff who had used the strip of land in controversy, the statement was elicited from several of them that their use of the land was not with a view to acquiring a right-of-way over it. One witness stated that if he had been ordered by the owners of the contended servient estate to desist from using the land in controversy, he would have done so.

It would serve, we think, no useful purpose to further recount the testimony of the plaintiff and of the defendants on the matter of prescriptive use. What we have said, we believe, shows that the testimony is, in many salient respects, in direct conflict, both as to fact and inference. We are of the opinion that the recitals in the deeds relied upon by the plaintiff are

of no material assistance in the matter of proving a prescriptive use of the land in controversy. They are not ancient documents in the sense that would make their recitals of material evidential value. It seems to us that the decision of whether the plaintiffs have proved a prescriptive use in a manner that would make the trial chancellor's decree to the contrary clearly wrong, is settled by three well-recognized rules discussed and laid down by Judge Brannon in our own case of *Crosier* v. *Brown*, 66 W. Va. 273, 66 S. E. 326, 25 L. R. A. (N. S.) 174. These rules are: first, that the proof of prescriptive use by which one man's land is subjected, without pay, to the use of another, must be clear and convincing; second, that if the use is by the permission or license of the owner of the contended servient estate, no prescriptive easement results; third, that the use upon which a prescriptive right is based must be adverse to the owner of the servient estate and with his knowledge and silence. We are of the opinion that in the state of this conflicting proof, it would be impossible for us to find that the trial chancellor's decree in favor of the defendants is clearly wrong, if it had been based upon any one of three findings that would have justified it, namely, that the plaintiff's proof of all of the elements of prescription is not clear and convincing; that such use of the land in controversy as the plaintiff has shown by clear and convincing evidence, was with the permission and license of the owner of the servient estate, either expressly given or implied from the circumstances; or that such use as has been established was not clearly shown to be adverse to the owner of the servient estate. We therefore find that the trial chancellor's decree is not to be reversed on this point.

The last proposition that is advanced by the plaintiff below is that the deeds under which the defendants hold bind them to recognize and observe the rights of the plaintiff in and to the sixteen and one-half foot strip of land in controversy.

The first of the deeds under which the Lillys hold is dated October 27, 1922, and was made by T. E. Combs and wife and Thelma Combs to J. D. Lilly, J. G. Lilly and N. L. Lilly. It conveyed one-half of the Combs lot and building, being that half which was next to the Blankenship building and fronted

Main Street twenty-seven and five-tenths feet. The deed in question contains the following language relied upon by the plaintiff below as sustaining the contention advanced by it: ''The said parties of the first part hereby expressly reserve from the *opearion* of this conveyance all rights of theirs and others in connection with, touching and attached to the alley lying to the rear of said building hereby conveyed and between said building and said Raleigh Hardware building, and do further grant unto said parties of the second part the right to use said alley for ingress and egress to and from said building hereby conveyed.''

Plaintiff asserts that this deed operated: first, to vest in Blankenship a right-of-way over the land in controversy, and second, to bind the Lillys to recognize a right in Blankenship to the easement in question.

It seems to be conceded in the plaintiff's brief that if the language quoted is to be taken as a technical reservation, as the words used would indicate, it could not operate for the benefit of a person not a party to the conveyance itself. However, plaintiff asserts that the language quoted should not be read as a technical reservation, but that it should be given the effect of an exception, in which case it can operate for the benefit of Blankenship. It may be conceded that in order to preserve the validity of a stipulation of this kind, the courts look to the substance and do not consider themselves strictly bound by the language used. Without entering upon a technical discussion of the distinction between ''reservations'' and ''exceptions,'' and, once defined, of the technical operation of each, it may be said that it is a matter of serious doubt whether either a reservation or an exception can operate actually to vest rights in a stranger to the instrument. A reservation to a stranger to the instrument is void for all purposes. The fact that this is so has inclined the courts, in order to save the substance, to construe provisions intended for the benefit of strangers to the instrument as exceptions rather than as reservations. This, however, does not mean that as an exception a provision may operate actually to vest rights in a third person not a party to the instrument. Those rights, if in existence, may be recognized, confirmed and

preserved by an exception, and when such a purpose plainly appears, clauses phrased as reservations have been construed as exceptions to prevent them from failing and to effectuate the plain purpose of the parties. We believe that, without extending citations, reference to the following cases and the annotations thereto will be found to sustain what has been said. *Deaver* v. *Aaron*, 159 Ga. 597, 126 S. E. 382, 39 A. L. R. 126, and note; *Beardslee* v. *New Berlin Light & Power Company*, 207 N. Y. 34, 100 N. E. 434, Ann. Cas. 1914B, 1287, and note; *Stone* v. *Stone*, 141 Iowa 438, 119 N. W. 712, 18 Ann. Cas. 797, and note, 20 L. R. A. (N .S.) 221, and note.

But we are of opinion that the deed in question does not show the plain purpose either to vest an easement in Blankenship or to except from the operation of the conveyance any recognized rights already vested in him. When the other provisions of the deed are considered, it will be found that no such intention clearly appears. In the first place, J. D. Lilly, J. G. Lilly and N. L. Lilly, the grantees in the deed, were, at the time of the conveyance, the tenants of the grantors in the ground floor and basement of the building covered by the deed. The Lillys assumed one-half of the obligations of the Combs under a certain joint heating contract that the Combs had made with P. L. Blankenship in 1912, which provided that the Blankenship building and all of the Combs building should be heated from a plant located in the Combs building. This contract expressly gave to Blankenship the right of ingress and egress to the heating plant located in the Combs building which was reached over the land in controversy and through a door into the basement of the Combs building that opens upon it. All the rights of the Combs concerning the building conveyed under this contract were, by the deed, transferred to the Lillys. The Combs further granted to the Lillys, and to their heirs and assigns, the right to use the stairways leading from the sidewalk on Main Street to the second floor of the building, as well as the rights to the stairway to the third floor, and reserved to themselves and to their heirs and assigns, and to the lessees of the adjoining building lying north of the building conveyed, the right to use all of the said stairways, stipulating that the

stairways to the building conveyed, as well as the stairways to parts of the Combs building not covered by the conveyance, were to be used in common for the benefit of all of the occupants and tenants of both buildings. The deed then goes on to provide that the cost of maintaining the stairways shall be borne equally by the owners of the building. It is after these various stipulations that the language quoted, depended upon by the plaintiff, appears. It will be seen from the foregoing that at the time of the conveyance in question, P. L. Blankenship, by virtue of the joint heating agreement, did have certain restricted rights to pass over the land in controversy for the purpose of going to and inspecting the joint heating plant serving the Combs building and his own. It will be observed further that there were reserved the rights of tenants and occupants of the Combs building, or at least that part thereof not conveyed, to make use of the land in controversy. It is not clear that the language of the deed referring to stairways was intended to embrace the joint use of the stairway coming down at the back of the Combs building on to the land in controversy, but in the light of the proof it could well be that the parties to the deed had that purpose in mind. It is perfectly apparent, we believe, that such rights in P. L. Blankenship as may have been recognized and confirmed by the language quoted from this deed were such rights only as were in existence at that time, and that the deed was not intended to operate either as a grant of further rights to him or as a recognition of any rights in him not in existence at the time the deed was executed. The only right to the use of the land in controversy that he had at the time this deed was executed was for the purpose of ingress and egress in connection with the heating plant. This right terminated upon the destruction of the Combs building by fire in 1931. It was exercised permissively and could not have given rise to anything beyond its stated purpose. We are therefore of the opinion that nothing that this deed contains can operate to vest in the plaintiff below, successor in title to Blankenship, any right of easement upon the land in controversy.

What we have said of the deed from T. E. Combs and wife and Thelma Combs to J. D. Lilly, J. G. Lilly and N. L. Lilly, dated October 27, 1922, we believe applies in the same manner and with equal force to the deed from T. E. Combs and wife and Thelma Combs to J. L. Meador and W. H. Cunningham, predecessors in title of the defendants.

Added to all of the other considerations under which the intention of the parties to these two deeds is to be ascertained in so far as the creation of an easement in the land in controversy is concerned, is the fact that in order to give them binding effect to that end, they would have to be construed as abandoning or as releasing the party wall agreement between Combs and Blankenship. We do believe that such a purpose can be read into them.

For the foregoing reasons, we are of the opinion that the decree of the trial chancellor, finding in favor of the defendants and dismissing the plaintiff's bill of complaint, must be affirmed.

As to the case of Sanders, Trustee, v. Lilly and others, argued and submitted with the principal case, we are of the opinion that, in view of our decision of the principal case, the matters therein involved become virtually moot. The circumstances surrounding the execution of the deed of January 20, 1932, between Sanders, Trustee, and J. D. Lilly and others, while they disclose a very regrettable misunderstanding between two respected attorneys, in our opinion, do not justify us in reversing the trial court's decree. The result, we believe, did not materially affect the interests of the parties to the principal case.

For the reasons stated the decrees of the circuit court of Wyoming County in both cases are affirmed.

*Affirmed.*