DILLEN L. SWICK *v.* WEST VIRGINIA COAL AND COKE COMPANY

(No. 9012)

Submitted February 21, 1940.  Decided March 12, 1940.

E. A. Bowers and Keith Cunningham, for plaintiff in error.

E. Wayne Talbott, for defendant in error.

Fox, Judge:

Dillen L. Swick instituted an action before a justice of the peace, in which he sought to recover from the West Virginia Coal and Coke Company the sum of $300.00, his claim being for "damages for a wrong, trespassing on land," as appears from the justice's transcript. Judgment was rendered by the justice for the full amount of the claim, and on appeal to the circuit court of Barbour County a verdict for a like amount was returned by a jury. A motion to set aside the verdict was overruled, and judgment was entered thereon for the plaintiff, to which action by the court the Coal and Coke Company prosecutes this writ of error.

This action originated before a justice, and there being no written complaint filed, either before the justice or in the circuit court on appeal, we are at a loss to know the exact basis of plaintiff's claim, whether for temporary or permanent damages. "Damages for a wrong" in a proceeding before a justice cover civil complaints of every description other than those arising out of contracts. While the evidence shows that the damage claimed grew out of the action of the defendant in draining mine water through an open ditch some sixty feet in length across a lot in the town of Junior, in which the plaintiff had interest as remainderman, it does not clearly disclose whether the recovery sought is for permanent damage to the land or for temporary inconvenience in its use. Nor does the verdict assist us. The only paper in the entire record which throws any light on the subject is the one instruction given in the case, and that at the instance of the plaintiff, which told the jury that if they believed from the evidence that certain specified actions of the defendant caused "permanent damages to the plaintiff's land," they should find for the plaintiff. This being true, we are justified in treating the action as one in which the plaintiff seeks to recover for permanent damage to his property.

Under the circumstances, we think this was the only action plaintiff could maintain. The deed under which he claims title was executed by his mother, Lucy J. Swick, January 15, 1934, by which she, in consideration of his past and future contribution to her support, the payment of taxes, and expenditures for certain repairs and additions to the building, conveyed the land alleged to have been damaged. However, in this deed there is the following provision as to possession:

> "The said Lucy J. Swick, party of the first part is to have possession of the above mentioned property during her natural life time, and at her death the said Dillen L. Swick party of the second part shall have full right and possession of said property.",

and, considering the deed as a whole, we construe it to

mean that the grantor reserved the possession of the property conveyed for her natural life, and, she being alive, there was, under said deed, no right of possession in Dillen L. Swick at the date of the institution of this action. True, he was living there, his mother having moved to the home of another son. For the purposes of this case, we treat the possession of the land in question by the plaintiff as possession under his mother, Lucy J. Swick, the life tenant, for the reason that we do not think that she lost her right of possession by moving from the property and leaving the plaintiff to reside thereon. She can resume her possession of the property at any time.

Lucy J. Swick, as life tenant, certainly had the right to recover damages for any unlawful act which affected her use of the property, and this right might, under some circumstances, extend to any person holding under her. In this connection, however, we have the testimony of Lucy J. Swick that she makes no claim for damages; that she had given permission to open the ditch over her land about the year 1915, and had never revoked such permission. That she might have revoked this permission under the decisions of this Court in *Pifer* v. *Brown,* 43 W. Va. 412, 27 S. E. 399, 49 L. R. A. 497; *Montgomery* v. *Economy Fuel Co.,* 61 W. Va. 620, 626, 57 S. E. 137; *Dickinson* v. *Foster,* 81 W. Va. 739, 95 S. E. 196; and *Sommerville* v. *Carpenter,* 110 W. Va. 167, 169, 157 S. E. 160, is beside the point. She has not done so, and her deed to the plaintiff did not operate as a revocation, and the plaintiff cannot revoke such permission during the life estate of Lucy J. Swick. Any right in the plaintiff under the situation presented by the record must rest on permanent damage to the property which will eventually come into his possession, or, under certain conditions, the equitable remedy of an injunction to prevent damage for which a recovery at law will not compensate. We do not mean to say that if the plaintiff held possession of this property as a tenant under his mother, for a definite term, he would not be entitled to recover for any interference with his possession under his tenancy; but in this case he was at most a tenant by

sufferance and there being no showing of any acts causing damage during his tenancy, other than acts covered by the permissive right vested in the Coal and Coke Company, there cannot be, in our judgment, any possible ground for maintenance of an action on the part of the plaintiff for temporary damage to the land in question. While the rights of both tenant and remainderman to sue for damages, where a tort upon realty affects each estate, are clear, (*Jordan* v. *Benwood,* 42 W. Va. 312, 26 S. E. 266, 36 L. R. A. 519, 57 Am. St. Rep. 859; and *Shaw* v. *Railway* Co., 100 W. Va. 368, 130 S. E. 461,) they are separate and independent rights, and we do not think that either the life tenant or anyone holding under her could maintain an action for permanent damage to the land. Either the remainderman or the reversioner could maintain such action.

Having determined (1) that the action was one for permanent damage and (2) that such action was the only one which the plaintiff, under the situation at bar, could maintain, the question of whether or not the proof supports the verdict is presented. While details of the acts and conduct of the defendant alleged to have caused damage are admissible, we think the rule is that where real estate is permanently damaged the measure of recovery therefor is the diminution in the value of the land affected. The rule is stated in 15 Am. Juris. 517 as follows:

> "In case of an injury of a permanent nature to real property the proper measure of damages is the diminution in the market value of the property by reason of that injury, or in other words the difference between the value of the land before the injury and its value after the injury."

See also 4 Sutherland on Damages, Fourth Ed., sec. 1017; *Keene* v. *Huntington,* 79 W. Va. 713, 92 S. E. 119, L. R. A. 1917 F, 475; *Jordan* v. *Benwood, supra.* Under this rule the verdict of the jury is not sustained by the evidence. There is, in fact, no evidence showing that the value of the property in question has been reduced by the acts of damage complained of. There is some evidence as to loss of trees and shrubbery and as to the effect of drainage from the

mine, and as to the trees and shrubbery and other alleged annoyance there is an attempted estimate of damages totaling $13.75.

The evidence relied on to support the verdict is that over a period of three years the plaintiff suffered damages at the rate of $100.00 per year. This suit was instituted on January 10, 1939, and three years prior thereto would extend back to the corresponding date in the year 1936. According to the evidence, Lucy J. Swick did not remove from the property in question until the late fall of 1937. Aside from this, permanent damage is not ascertained by this method, for, as stated above, the rule is that the effect of the damage upon the market value of the property affected must be ascertained. If there was substantial permanent damage to this real estate, it must, under the evidence, grow out of the use of the ditch and the drainage of mine water over the land in question. There is evidence of the existence of a spring, the water from which finds its way to the river over the land here involved. The effect of the use of the ditch, which takes care not only of mine drainage water but of surface drainage and the spring water as well, upon the value of the land, was the important question at issue, and on this vital point there is no evidence upon which a jury would be warranted in returning a verdict as to how such value was affected. It follows that the verdict of the jury should have been set aside and a new trial awarded.

The contention that the defendant has acquired by prescription a right to drain the water from its mine over the land in question is not, in our opinion, sustained by the authorities. Defendant's use of such land was permissive, based upon a verbal agreement between the Coal and Coke Company, or its predecessor in title, and the husband of Lucy J. Swick, of which she had notice and to which, according to her testimony, she agreed. "A merely permissive user cannot ripen into a prescriptive right." 17 Am. Juris. 986; *Pifer* v. *Brown,* supra, 426 of 43 W. Va.; *Beckley · Nat. Bank* v. *Lilly,* 116 W. Va. 608, 182 S. E. 767, 102 A. L. R. 462.

The judgment of the circuit court is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*