Anna M. Malamphy

*v.*

Potomac Edison Company, *a Corporation*

(No. 10655)

Submitted September 14, 1954. Decided October 12, 1954.

*Harry K. Drane, Horace P. Whitworth*, for plaintiff in error.

*Vernon E. Rankin,* for defendant in error.

Lovins, Judge:

This action was instituted in the Circuit Court of Mineral County, West Virginia, by Anna M. Malamphy, plaintiff, against the Potomac Edison Company, a Corporation, defendant. The plaintiff seeks a recovery of damages for trespass on land allegedly owned by her. De-

fendant claims the right to use the land by permission of an alleged owner.

The case was submitted to a jury, which, after hearing the testimony and viewing the land, returned a verdict for $2000.00. The trial court overruled a motion to set aside the verdict and grant defendant a new trial, and entered judgment for the amount thereof. The defendant prosecutes this writ of error to such judgment.

Anna M. Malamphy, the plaintiff and the Potomac Edison Company, a Corporation, defendant, are herein so designated.

A certain tract of land formerly owned by the Cumberland Railway Company is now owned by the Western Maryland Railway Company. A portion of such land containing approximately 1.5 acres was conveyed by the Cumberland Railway Company to Mary L. M. Schiller, by deed bearing date the 2nd day of September, 1915. The land so conveyed was described by metes and bounds in the deed of conveyance and contained the following language:

> "There is, however, excepted from the operations of this conveyance, two certain roads, which extend through and over the above described premises, they being known as the old County Road, near the river, and the present County Road lying above it, together with all rights of ingress and egress for all kinds of travel over said roads, to the remainder of the Cumberland Railway Company lands along the river."

Mary L. M. Schiller conveyed the land to J. M. Malamphy, husband of the plaintiff. There are vague references in the record that J. M. Malamphy was assisted in the purchase of the land by the Western Maryland Railway Company, but just what part the Railway Company took in the purchase of such land is not specifically disclosed by this record.

By deed bearing date the 21st day of December, 1943, J. M. Malamphy and his wife, the plaintiff herein, con-

veyed the land to a trustee, who, on the same day reconveyed such land to J. M. Malamphy and Anna M. Malamphy, with a right of survivorship. J. M. Malamphy departed this life on or about the 6th day of June, 1948, and his widow, the plaintiff, now claims to own the land by virtue of the survivorship provisions.

The deraignment of title is not specifically shown by title deeds, but there seems to be no dispute concerning the same. The conveyances above stated are covered by stipulation of counsel. No exceptions appear in the deeds of conveyances made by Mary L. M. Schiller to J. M. Malamphy or by Malamphy and the plaintiff to the trustee, nor do any exceptions appear in the deed made by the trustee to Malamphy and wife.

Shortly before J. M. Malamphy died, the defendant commenced using the land ostensibly on the old road right-of-way by virtue of permission of the Western Maryland Railway Company.

There was some controversy between J. M. Malamphy and A. G. Wallace, superintendent of the river plant of the defendant. Three gates which were presumably placed by the Malamphys or at their direction, were removed by the employees of the defendant.

After the death of Malamphy, the defendant continued the use of the land for the purpose of hauling "fly ash" from its power plant to a dumping ground located on land owned by the Western Maryland Railway Company. The defendant entered upon the land and widened the road by the use of a bulldozer, destroying a part of plaintiff's lawn on which she was cultivating flowers.

The road used by them runs in close proximity to the plaintiff's porch. It is established by oral testimony that holes 10 or 12 inches deep, in which water stood, are located in front of her house, and that such holes were caused by the use of the road by the defendant; that when the trucks of the defendant used the road, water and mud were splashed on the front porch of the plaintiff's house;

that soot or "fly ash" with which the trucks of the defendant were loaded was released and settled on plaintiff's porch, and that by reason thereof, the front porch of the plaintiff is rendered unusable. It was further shown that the soot or "fly ash" has penetrated the house and has settled on the curtains, rugs and furniture therein located. The plaintiff also avers and establishes by proof that the fruit and vegetables in her garden were spoiled or damaged by the soot, and they are not susceptible of use until washed. The plaintiff testified that the use of the road by the defendant at night interfered with her rest and sleep, and that by reason thereof, she left her house and went elsewhere to live for a short while.

After the evidence was introduced, the trial court granted a view of the premises by the jury.

The plaintiff tendered its Instruction A which was given as amended. The defendant tendered its Instructions 1, 2 and 3. The trial court refused to give defendant's Instructions 1 and 2, but defendant's Instruction 3 was given without objection.

The jury rendered a verdict as above stated, on which the court, after overruling a motion to set aside the verdict, entered judgment for the amount thereof. The defendant assigns as error the action of the court: In refusing to give its Instructions 1 and 2; in overruling the defendant's motion to set aside the verdict, and in entering judgment in favor of the plaintiff and against the defendant.

The controlling question presented on this writ of error relates to the proof of the quantum of damages allegedly suffered by the plaintiff.

Before discussing that question, we advert to other questions which we think are important, though not controlling, and should be clarified upon another trial.

The defendant relies upon the language in the deed from the Cumberland Railway Company to Mary L. M. Schiller.

An exception and a reservation in a deed of conveyance are different in legal effect, though the terms are sometimes used interchangeably, or as being synonymous. An exception is language by which "* * * the grantor withdraws from the operation of the conveyance that which is in existence, and included under the terms of the grant." *Tate* v. *United Fuel Gas Co.*, 137 W. Va. 272, 71 S. E. 2d 66, 76; 1 Devlin on Real Estate, Third Edition, §221; 16 Am. Jur., Deeds, §298. "A reservation is 'something arising out of the thing granted, not then *in esse*, or some new thing created or reserved, issuing or coming out of the thing granted, and not a part of the thing itself, nor of anything issuing out of another thing'". *Tate* v. *United Fuel Gas Co.*, *supra*; 1 Devlin on Real Estate, Third Edition, supra.

Bearing in mind the foregoing principles, the language used in the deed from Mary L. M. Schiller to J. M. Malamphy created an exception and the land or rights, whichever they are, never vested in the plaintiff in this suit, as the grantor withheld title to that part of the land described in the deed. *Coal Co.* v. *Burgess*, 86 W. Va. 16, 20, 102 S. E. 690.

Notwithstanding that the language in a deed of conveyance may be phrased as a "reservation", such language may be regarded and treated as an exception if it is necessary in order to carry out the plain purposes of the parties to the instrument. *Exchange Bank* v. *Lilly*, 116 W. Va. 608, 621, 182 S. E. 767; 2 Devlin on Real Estate, Third Edition, §980. See *Terry* v. *Tinsley*, (Va.) 124 S. E. 290.

It will be noted that the deed of conveyance from the Cumberland Railway Company refers to the exception as two certain roads called "the old county road near the river and the present county road lying above it." It is not stated whether such roads are public or private roads, nor does the record disclose the character of such roads. The proof does not show or tend to show whether the roads were conveyed, dedicated, or whether they were

acquired by grant, condemnation or prescriptive use, nor is the width and length of such roads shown. See *Harding v. Jennings,* 68 W. Va. 354, 70 S. E. 1. Likewise, the record is devoid of any proof showing the traveled way on the ground. A road other than a main county road shall occupy a right-of-way not less than thirty (30) feet wide and the necessary slopes. See Chapter 66, Acts of the Legislature, 1917, §68. Code, 17-1-3; *County Court* v. *Coal Co.,* 103 W. Va. 386, 137 S. E. 754; *Road Com.* v. *Coogle,* 108 W. Va. 287, 291, 150 S. E. 719; *Hark* v. *Lumber Co.,* 127 W. Va. 586, 590, 34 S. E. 2d 348. The record is silent whether the land occupied by such road was held in fee or whether only an easement over such land existed.

The showing by the defendant with respect to such exception is defective in that it does not show how the Western Maryland Railway Company acquired the ownership thereof, or transferred the right to use such roads to the defendant herein. Though it is asserted in the oral testimony that permission had been granted by the Western Maryland Railroad Company to the defendant, we do not think such testimony is convincing.

The fact that the deeds from Mary L. M. Schiller to J. M. Malamphy, from J. M. Malamphy and wife to the trustee, and from the trustee to J. M. Malamphy and Anna M. Malamphy contain no language showing the exceptions made in the deed of conveyance by the Cumberland Railway Company to Mary L. M. Schiller, does not abrogate or destroy such exceptions. The plaintiff, as well as other and subsequent grantees, deraign title from Mary L. M. Schiller. "A right or interest reserved in a conveyance will be effective as against all who deraign title through the grantee, although the reservation is not expressed in subsequent deeds." 16 Am. Jur., Deeds, §304.

The cases of *Benn* v. *Hatcher and als.,* 81 (Va.) 25 and *Wait* v. *Baldwin* (Mich.) 27 N. W. 697, are ample authority for the proposition that a subsequent purchaser is bound

by a prior restriction contained in a deed to a grantee through whom such purchaser deraigns his title. See *Sheets* v. *Dillon* (N. C.) 20 S. E. 2d 344. We think, however, that it is logical to say that a deed of conveyance in a chain of title containing an exception binds such purchaser though the exception is not set forth in other deeds subsequent to the deed containing such language. Otherwise, a subsequent purchaser could abolish valuable rights retained by persons who may not be concerned with the subsequent sale and conveyance of the land.

There is some argument which seems to urge that a view by the jury as to the damage done to the premises suffices to supply defects in the proof as to the quantum of damages. This Court has discussed the function and effect of a view by a jury. In *Fox* v. *Balt. & O. R'd Co.,* 34 W. Va. 466, 480, 12 S. E. 757, this Court, in discussing such question raised by an instruction given by the trial court, used the following language: "* * * The object of such view must be to acquaint the jury with the situation of the premises, and the location of the property, so that they may better understand the evidence, and apply it to the local surroundings of the case. To instruct them [the jury] to disregard everything they saw, and every impression they received from the view, would be to mislead them, because it is apparent that the view would be absolutely useless, and would not conduce to a 'just decision,' if both sight and apprehension were to be closed against the results naturally to be derived from an inspection of the premises. * * *" Later opinions of this Court, we think, state the true function and effect of a view by the jury. In *Railway Co.* v. *Allen,* 113 W. Va. 690, 169 S. E. 610, the first point of the syllabus reads as follows: "The primary object of having a jury view premises in question is to display the local situation so that the jury may better understand the record evidence. The view is not to furnish essential evidence *dehors* the record." To the

same effect is the opinion of this Court in *Thorn* v. *Addison Bros.,* 119 W. Va. 479, 484, 194 S. E. 771. In *Doman* v. *Railroad Co.,* 125 W. Va. 8, 12, 22 S. E. 2d 703, the following language is used: "The jury viewed the land claimed to have been so greatly damaged, and what they saw, while not in all respects evidence, did enable them better to understand the testimony given in court." See *State* v. *Sanders,* 125 W. Va. 143, 151, 23 S. E. 2d 113, where it is said in substance that a view by a jury throws light upon the record evidence. *Frampton* v. *Consolidated Bus Lines,* 134 W. Va. 815, 836, 62 S. E. 2d 126.

Coming now to the question of instructions tendered by the defendant and refused by the court. Instruction number 1 tendered by the defendant and refused, reads as follows: "The Court instructs the jury that if they believe from the evidence that in the deed from the Cumberland Railway Company for the premises described in the declaration to Mary L. M. Schiller there was excepted from the operation of said conveyance two certain roads, which extend through and over the said premises, known as the old "County Road near the River and the present County Road lying above it, together with all rights of ingress and egress for all kinds of travel over said Roads to the remainder of said Railway Company's lands along the river, and that the title of said plaintiff, Anna M. Malamphy to said premises was derived from the said Mary L. M. Schiller, then the said plaintiff, Anna M. Malamphy holds the said premises subject to said exception in the deed from said Railway Company aforesaid, and the said defendant, Potomac Edison Company, has the right to use said Road for the purpose of reaching its dumping ground on said Railway Company's grounds along said river." The above instruction assumes that the location of the roads was established by proof; and though the instruction is correct in stating that the plaintiff holds her land subject to the exceptions in the deed from the Cumberland Railway Company to Mary L. M. Schiller, in the

present state of the record, Instruction Number 1 is incorrect in instructing the jury that the defendant has the right to use said road for the purpose of reaching its dumping ground on said railroad's property along the river. As stated above, there is no proof as to the location of these roads in this record, nor is there any proof shown by what means the defendant acquired the right to use them. Of course, if both roads still retain their public character, the public, and therefore the defendant, would be entitled to use such roads.

Defendant's Instruction Number 2 reads as follows: "The Court instructs the jury that the uncontradicted evidence in this case shows that the defendant, Potomac Edison Company, had the legal right to use the old County Road across and through the property of the plaintiff, Anna M. Malamphy, in the usual and ordinary manner for transporting ashes and other materials into and out of the property of the Cumberland Railway Company adjoining, and if they believe from the evidence that the roadway used by the defendant in front of the plaintiff's house and across her lot of ground was such old County Road, then the plaintiff is not entitled to any damages whatever for any trespassing upon her lands by the defendant's trucks in using said Road." The record showing that the defendant has the legal right to use the old county road is deficient in that particular, as hereinbefore noted. It was not error on the part of the trial court to refuse defendant's Instructions 1 and 2.

Assuming, but not deciding that the defendant has a legal right to use the road or easement as claimed by it, it is incumbent upon the defendant to use the same in such manner as not to injure the land of the plaintiff. See 39 Words and Phrases, Permanent Ed., Page 335 et seq.

Coming now to the question of the proof of damages. It is established by proof that the defendant's use of the road damaged the plaintiff's property. The defendant's trucks scattered fly ash and soot upon the fruit and vegetables grown by the plaintiff on her land; mud and

water were splashed upon the plaintiff's house and porch. Likewise, the soot or fly ash permeated the plaintiff's dwelling and settled on the rugs, carpets and window curtains located in plaintiff's dwelling. It is uncontradicted that the use of the roadway in front of plaintiff's home disturbed her sleep, so that she was unable to rest and that by reason of such disturbance, she was required to go elsewhere and live. The road was widened by the use of a bulldozer, and the flowers and grass planted by the plaintiff were uprooted.

But the proof as to the quantum of damages is absent. It does not show how much fruit and vegetables were grown on the lands of the plaintiff nor the cost of preparing them for consumption, by washing or otherwise. There is no proof showing the cost of cleaning the house and porch of the muddy water and soot which settled on the porch and house. Likewise, no proof is tendered showing the number of carpets, rugs and curtains damaged by the soot and fly ash, nor is there proof of the cost of cleaning of same. The record is devoid of the proof relating to the number of days the plaintiff was deprived of the use of her property, nor is the rental value of such property shown, nor the cost of plaintiff removing elsewhere and returning to her property shown in this record. The area of the grass and the number of flowers which were uprooted by defendant's bulldozer is not shown, nor is the cost of the replacement of such flowers and grass. Such absence of proof, respecting the quantum of damage, is fatal to the verdict. The amount of damages suffered by plaintiff is purely speculative in the present state of this record. She cannot recover unless the amounts of such damage are proved. *Thomason v. Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699. The plaintiff may be entitled to a verdict for damages, but the jury was entirely in the dark as to the amount thereof. A verdict found on the evidence shown by this record will be set aside. *Welty* v. *Baer,* 107 W. Va. 226, 148 S. E. 193. See *Drummond v. Cook Motor Lines,* 136 W. Va. 293, 67 S. E. 2d 337.

The question now arises whether the damages attempted to be shown are permanent or temporary. Where the damages to real estate are permanent, the measure of such damage is the diminution in the market value of the property involved. *Swick* v. *Coal & Coke Co.,* 122 W. Va. 151, 7 S. E. 2d 697. In *Guinn* v. *Railroad Co.,* 46 W. Va. 151, 33 S. E. 87, the distinction between cases authorizing recovery of permanent and temporary damages is stated as follows: "* * * 'it is of a permanent character, that will continue without change from any cause but human labor, then the damage is an original damage * * *'". If the injury is permanent, entire damages, past and future may be recovered, but "* * * where the damage is not continuous, but intermittent, occasional, or recurrent from time to time" temporary damages only may be recovered. In *Keene* v. *Huntington,* 79 W. Va. 713, 724, 725, 92 S. E. 119, 124, the rule for recovery of permanent damages is stated in the following language: "* * * where the injury to real estate is such as to affect its value permanently, permanent damages can be recovered for that injury; or, if the character of the agency, from the operation of which the injury arises, is such that it can reasonably be expected to continue for an indefinite time, and its operation in the ordinary and proper way produces the injury complained of, the plaintiff not only can, but he must, if he would recover damages at all, sue and recover permanent damages * * *." A discussion of this question will be found in the case of *Flanagan* v. *Gregory & Poole, Inc.,* 136 W. Va. 554, 67 S. E. 2d 865, 873. In that case, it was held that the erection of an embankment and an inadequate culvert over a waterway whereby the flow of the water was impeded presented a case for temporary damages only. In *Oresta* v. *Romano Bros.* 137 W. Va. 633, 73 S. E. 2d 622, the fifth point of the syllabus reads: "In an action for the recovery of damages to real estate caused by the occasional, intermittent and recurring encroachment upon such real estate of dirt, rock and debris from an embankment on adjoining land, the damages recoverable are temporary, not permanent, in character."

The damages allegedly done to the plaintiff's land in the instant case were temporary and removable and she could only recover for the cost of restoring her land, the rental value thereof, and damages to her personal property. *Hargreaves* v. *Kimberly,* 26 W. Va. 787. See *Hurxthal* v. *Boom Co.,* 53 W. Va. 87, 44 S. E. 520 and *Henry* v. *Ohio River R. Co.,* 40 W. Va. 234, 21 S. E. 863. Where temporary damages to real estate are shown as in the instant case, the effect of the admission of proof as to the measure of damage on a permanent basis, is fatal to the verdict. *McHenry* v. *Parkersburg,* 66 W. Va. 533, 66 S. E. 754. This action being for the recovery of temporary damages to the real estate, "* * * evidence of the difference between the market value of the property immediately before and immediately after it was injured is inadmissible and, if admitted without objection, a verdict based upon such evidence will, on motion, be set aside." See *Oresta* v. *Romano Bros.,* supra.

The proof in this case does not establish the quantum of either kind of damages, and therefore the verdict will be set aside and a new trial awarded the defendant.

Accordingly, the judgment of the Circuit Court of Mineral County is reversed, verdict set aside and a new trial awarded the defendant.

*Reversed, verdict set aside,*
*new trial awarded defendant.*